Filed 8/23/18

# IN THE SUPREME COURT OF CALIFORNIA

|  |  |  |
|---|---|---|
| CITY OF MORGAN HILL, | ) | |
| | ) | |
| Plaintiff and Respondent, | ) | |
| | ) | S243042 |
| v. | ) | |
| | ) | Ct.App. 6 H043426 |
| SHANNON BUSHEY, as Registrar of Voters, etc., et al., | ) ) | |
| | ) | Santa Clara County |
| Defendants and Respondents; | ) | Super. Ct. No. 16-CV-292595 |
| | ) | |
| | ) | |
| RIVER PARK HOSPITALITY, INC., | ) | |
| | ) | |
| Real Party in Interest and Respondent; | ) ) | |
| | ) | |
| MORGAN HILL HOTEL COALITION, | ) | |
| | ) | |
| Real Party in Interest and Appellant. | ) ) | |
| _____ | ) | |

This case is about how to reconcile state land use law with the people's referendum power. To promote public deliberation and reasoned decisions about land use, state law requires cities and counties to develop general land use plans that function as charters for all future land use in that county or city. Government Code section 65860, subdivision (a)[1] requires zoning ordinances to "be consistent

---

[1] All subsequent statutory references are to the Government Code unless otherwise specified.

1

**SEE CONCURRING OPINION**

with the general plan of the county or city." This provision renders invalid any change to the zoning ordinance that would make it inconsistent with the general plan, whether the change is made by a local government or a local initiative. (*Lesher Communications, Inc. v. City of Walnut Creek* (1990) 52 Cal.3d 531, 544 (*Lesher*).) But local residents can use the power of initiative or referendum guaranteed to them by the California Constitution for a range of functions relevant to land use, including to alter the general plan for their municipality. (*DeVita v. County of Napa* (1995) 9 Cal.4th 763, 777-784 (*DeVita*).) When the general plan is amended without also changing the corresponding zoning ordinance, the county or city must amend the zoning ordinance within a "reasonable time" to make it consistent with the general plan. (§ 65860, subd. (c).) The question we must resolve is whether the people of a county or city may challenge by referendum a zoning ordinance amendment that would bring the ordinance into compliance with a change to the county's or city's general plan, even though such a referendum would temporarily leave in place a zoning ordinance that does not comply with the general plan.

What we conclude is that the people of a county or city can challenge such a zoning ordinance by referendum, at least where the local government has other means available to make the zoning ordinance and general plan consistent. Section 65860, subdivision (c) contemplates some temporary inconsistency between the zoning ordinance and the general plan for a "reasonable time" when the general plan is modified. A referendum simply keeps that inconsistency in place for a certain time — until the local government can make the zoning ordinance and general plan consistent in a manner acceptable to a majority of voters. The Court of Appeal correctly held that a referendum can invalidate a zoning ordinance amendment approved by a local jurisdiction to achieve compliance with a general plan amendment, where other general-plan-compliant

2

zoning designations are available that would be consistent with a successful referendum. In such a case, the local jurisdiction would likely be able to change the zoning ordinance to comply with the general plan and the referendum within a reasonable time.

But in this case, it is not clear whether the city can use other available zoning designations for the disputed property that would be consistent with the general plan and a successful referendum. If no current zoning designations consistent with the general plan are available for the local jurisdiction to comply with a successful referendum, the referendum is still valid if the local jurisdiction can create new zoning designations that attain such consistency. And the local jurisdiction may have other means to achieve consistency between the zoning ordinance and general plan after a referendum — such as by altering the general plan — that would prevent the removal of the referendum from the ballot. So we vacate the judgment of the Court of Appeal and direct it to remand the case to the trial court so it can address these issues.

I.

In November 2014, Plaintiff and Respondent City of Morgan Hill (the "City") amended its general plan. The City did so to change the land use designation of a vacant lot located at 850 Lightpost Parkway (the "property") from "Industrial" to "Commercial." Real Party in Interest River Park Hospitality, Inc. ("River Park") owns the property. River Park's stated purpose in rezoning the property was to develop a hotel. The specific zoning designation of the property — "ML-Light Industrial" — remained unchanged by the alteration to the general plan.

In April 2015, after public hearings on amending the zoning ordinance, the City's city council approved the zoning ordinance. This ordinance sought to change the parcel's zoning designation to "CG-General Commercial." According

3

to the parties, this is one of twelve potential commercial zoning designations in Morgan Hill. On May 1, 2015, Real Party in Interest Morgan Hill Hotel Coalition ("Hotel Coalition") — supported by over 4,000 signatures — petitioned for a referendum challenging the ordinance. The City Clerk issued a certificate of examination and sufficiency for the referendum on May 15, 2015, and five days later, the city council enacted a resolution accepting the certificate.

But in July 2015, the city council directed the City Clerk to discontinue processing the referendum because it "would enact zoning that was inconsistent with" the City's general plan. On January 13, 2016, in reaction to the discontinuance of the referendum, Hotel Coalition filed a petition for writ of mandate (in a different suit than the one at issue here) seeking to force a repeal of the City's zoning ordinance, or a vote on the referendum. That case was still pending when the trial court made its decision in the instant case, after which the parties settled the January 13, 2016, case.

Shortly thereafter, on February 17, 2016, the city council reviewed reports on alternatives for the property. Hotel Coalition suggested the City change the zoning designation to one that is consistent with the general plan and does not permit hotel use, or that it alter the general plan.

On March 2, 2016, the city council again placed the referendum on the ballot in a special municipal election scheduled for June 7, 2016. At the same time, the city council authorized legal action to remove the referendum from the ballot. A few weeks later, the City filed suit against Shannon Bushey, the Registrar of Voters for Santa Clara County, and Irma Torrez, the City Clerk for Morgan Hill, for an alternative and peremptory writ and declaratory relief to remove the referendum from the ballot and certify the zoning ordinance. On March 29, 2016, the trial court ordered the referendum removed from the ballot. In reaching its conclusion, the trial court relied on *deBottari v. City of Norco*

4

(1985) 171 Cal.App.3d 1204, 1212 (*deBottari*) — which held that such a referendum would "enact" an invalid zoning ordinance that is inconsistent with the general plan. Hotel Coalition promptly appealed.

The Court of Appeal reversed the trial court. (*City of Morgan Hill v. Bushey* (2017) 12 Cal.App.5th 34, 43 (*City of Morgan Hill*).) It expressly disagreed with *deBottari*'s holding that referendums are always invalid if they reject a zoning ordinance enacted by the local government to bring a property's zoning into compliance with the jurisdiction's general plan. (*Ibid.*) In cases where multiple available zoning designations could comply with the general plan, the Court of Appeal below held that a referendum rejecting the zoning change was acceptable because the City could adopt another zoning designation that would be consistent with the general plan within a "reasonable time." (*City of Morgan Hill*, at p. 43, quoting § 65860, subd. (c).) We granted review to determine whether the people can bring a referendum to challenge an amendment to a property's zoning where a prior general plan amendment rendered the property's zoning inconsistent with the general plan and the challenged zoning amendment seeks to make the property's zoning consistent with the amended general plan.

II.

California's legislative power is vested in its Legislature. But the people have "reserve[d] to themselves the powers of initiative and referendum." (Cal. Const., art. IV, § 1.) The referendum power allows the public to approve or reject statutes or parts of statutes. (*Id.*, art. II, § 9, subd. (a).) This power "may be exercised by the electors of each city or county under procedures that the Legislature shall provide," thereby granting to these electors the power to approve or reject local ordinances. (*Id.*, § 11, subd. (a).) Our duty is to " 'jealously guard' " the referendum and initiative powers, and to liberally construe those powers so that they " 'be not improperly annulled.' " (*Associated Home Builders*

5

*etc., Inc. v. City of Livermore* (1976) 18 Cal.3d 582, 591; see also *California Cannabis Coalition v. City of Upland* (2017) 3 Cal.5th 924, 936 (*California Cannabis*) ["[W]e resolve doubts about the scope of the initiative power in its favor whenever possible [citation], and we narrowly construe provisions that would burden or limit the exercise of that power"].)

People in counties and cities may also use their referendum and initiative powers to alter local government policy — subject to limited preemption by the state Legislature. (*DeVita*, *supra*, 9 Cal.4th at pp. 775-777.) The Legislature may engage in such preemption only if it acts within its constitutionally granted authority to legislate on issues of "statewide concern." (*Voters for Responsible Retirement v. Board of Supervisors* (1994) 8 Cal.4th 765, 779 ["the Legislature may restrict the right of referendum if this is done as part of the exercise of its plenary power to legislate in matters of statewide concern"].) We only find local application of the public's power of referendum or initiative preempted if there is a "definite indication" or a " 'clear showing' " that it was within the ambit of the Legislature's purpose to restrict those rights. (*DeVita*, at p. 775-776; *id.* at p. 775 [" '[W]e will presume, absent a clear showing of the Legislature's intent to the contrary, that legislative decisions of a city council or board of supervisors . . . are subject to initiative and referendum' "].) Such a "definite indication" exists, for example, where the state Legislature limits the local legislative body's discretion such that its task is "administrative" rather than "legislative" (*id.* at p. 776; *id.* at p. 775 ["the local electorate's right to initiative and referendum . . . is generally co-extensive with the legislative power of the local governing body"]) or delegates legislative authority exclusively to the local legislative body (see *id.* at pp. 776-777, citing *Committee of Seven Thousand v. Superior Court* (1988) 45 Cal.3d 491, 511-512 (*Committee of Seven Thousand*)).

6

Although zoning and general plans implicate local concerns and are often addressed by local governments, these arrangements also raise issues of "statewide concern." (*DeVita*, *supra*, 9 Cal.4th at p. 784.) So the Legislature has the constitutional power to enact laws limiting local government power over land use. (See *DeVita*, at pp. 772-773, 776, 784; see also *Lesher*, *supra*, 52 Cal.3d at p. 544; *Committee of Seven Thousand*, *supra*, 45 Cal.3d at pp. 510-512.) The Planning and Zoning Law of the State of California (§ 65000 et seq.) is an example: it requires every county and city in California to adopt a general plan. (*Lesher*, at p. 535.) A general plan sets a county's or city's development policies and objectives, and must contain a "land use element" that "designates the proposed general distribution and general location and extent of the uses of the land for housing, business, industry, open space, . . . public buildings and grounds, solid and liquid waste disposal facilities, greenways, . . . and other categories of public and private uses of land." (§ 65302, subd. (a).)

By initiative, local governments or members of the public may alter a general plan, including its land use elements. (*DeVita*, *supra*, 9 Cal.4th at pp. 775, 777-784.) While a given general plan is in effect, neither local governments nor electors can enact a zoning ordinance inconsistent with it. Section 65860, subdivision (a) provides that "[c]ounty or city zoning ordinances shall be consistent with the general plan of the county or city . . . ." (§ 65860, subd. (a).) In *Lesher*, we held that this provision preempts any local zoning ordinance that is inconsistent with the general plan when enacted, and that an ordinance passed by initiative is no exception. (See *Lesher*, *supra*, 52 Cal.3d at p. 544.) Any such inconsistent zoning ordinance "is invalid at the time it is passed." (*Ibid.*; see also *id.* at p. 545 [also describing such zoning ordinances as "invalid *ab initio*," that is, invalid from the start].)

7

Nonetheless, a local zoning ordinance may temporarily differ from the general plan following a *general plan* amendment. The Government Code favors simultaneous modification of the general plan and the relevant zoning provisions. (§ 65862 ["It is the intent of the Legislature, in enacting this section, that local agencies shall, to the extent possible, concurrently process applications for general plan amendments and zoning changes which are needed to permit development so as to expedite processing of such applications"].) But this preference is not a requirement. (See *ibid.* [requiring the concurrent processing of general plan amendments and zoning changes "to the extent possible"].) So section 65860, subdivision (c) governs in circumstances where the zoning ordinance "becomes inconsistent with a general plan by reason of amendment to the plan, or to any element of the plan." (§ 65860, subd. (c).) In such circumstances, "the zoning ordinance shall be amended within a reasonable time so that it is consistent with the general plan as amended." (*Ibid.*) This provision only applies to "zoning ordinances which were valid when enacted," that is, were enacted before the general plan amendment and were consistent with the prior general plan. (*Lesher*, *supra*, 52 Cal.3d at p. 546.) The purpose of subdivision (c) "is to ensure an orderly process of bringing the regulatory law into conformity with a new or amended general plan, not to permit development that is inconsistent with that plan." (*Ibid.*)

The core question here is whether the state Legislature preempted local electors' power to challenge by referendum a local government ordinance — one aligning the relevant zoning designations with the amended general plan. Hotel Coalition contends that the local electors can exercise their referendum power without conflicting with section 65860, subdivision (a), at least where the local government could have chosen to comply with the general plan through *other* zoning designations. (See *City of Morgan Hill*, *supra*, 12 Cal.App.5th at p. 43;

8

*Save Lafayette v. City of Lafayette* (2018) 20 Cal.App.5th 657, 664-669 [following *City of Morgan Hill*'s reasoning].)  The City and River Park argue such a referendum is invalid, because it is effectively the same as an initiative causing the zoning ordinance to conflict with the general plan.  (See *deBottari*, *supra*, 171 Cal.App.3d at p. 1212; see also *City of Irvine v. Irvine Citizens Against Overdevelopment* (1994) 25 Cal.App.4th 868, 874-879 [following *deBottari*].)

We disagree with the City and River Park.  What we conclude is that the people of a local municipality may indeed challenge by referendum a zoning ordinance amendment that changes a property's zoning designation to comply with a general plan amendment, at least where other consistent zoning options are available, or the local municipality has the power to make the zoning ordinance and general plan consistent through other means.  A referendum is not impermissible — and its result is not null — simply because, if approved by the voters, it forces some change to a local government action taken to align zoning with the general plan currently in force.  Section 65860, subdivision (c)'s exception to subdivision (a) governs circumstances where the zoning ordinance must be amended in response to changes to the general plan.  (See § 65860, subd. (c) [applying where "the zoning ordinance shall be amended . . . so that it is consistent with the general plan as amended"].)  A referendum challenging an amendment to the zoning ordinance does not result in the final imposition of an invalid zoning designation to the property preempted by section 65860, subdivision (a), at least where a county or city can use other means to bring consistency to the zoning ordinance and the general plan.  (But see *Lesher*, *supra*, 52 Cal.3d at p. 544 [holding that § 65860, subd. (a) preempts a zoning ordinance inconsistent with the general plan].)

Instead, a successful referendum in such circumstances prevents the local government from changing the previously existing zoning designation for the

9

property — notwithstanding its noncompliance with the amended general plan. It does so without vitiating the City's duty to make the zoning ordinance and general plan consistent with one another. (See § 65860, subd. (c) [stating that the "zoning ordinance shall be amended" to comply with the amended general plan].) Section 65860, subdivision (c) allows out-of-compliance zoning for a "reasonable time" while the local legislative body seeks to amend the zoning ordinance because the original designation was "valid when enacted" (*Lesher*, *supra*, 52 Cal.3d at p. 546). This exception to subdivision (a)'s prohibition does not dissolve merely because a local government tried and failed on its first attempt to apply a particular zoning designation to a piece of property.

The City and River Park argue that a referendum does more than merely prevent change of the noncompliant zoning ordinance. They construe it instead as an affirmative action that "repeals" the amending ordinance, which thus "revives" the out-of-compliance zoning designation. We disagree. Under article II, section 9 of the California Constitution, the referendum power is "the power of the electors to *approve or reject* statutes." (Cal. Const., art. II, § 9, subd. (a), italics added.) Electors in counties and cities have the same power to approve or reject ordinances. (*Id.*, § 11, subd. (a).) Rather than "reviving" an inconsistent zoning ordinance, a successful referendum is merely the rejection of an amendment before it takes effect — there is no revival of the out-of-compliance zoning designation because it was never eliminated.

A review of the procedures governing local referendums demonstrates why. To bring a referendum, those opposing the ordinance must submit a petition

10

signed by at least 10 percent of the voters of the city[2] protesting the adoption of the ordinance within 30 days of the date the ordinance "is attested" to being properly enacted by the legislative body. (Elec. Code, § 9237; *id.*, § 9242 [requiring submission of the petition "within 30 days from the date of the adoption of the ordinance to which it relates"]; see also *id.*, § 9144 [requiring, for county referendums, that the petition be filed before the ordinance's effective date].) The effective date of most ordinances, with limited exceptions, must be "30 days from and after the date of . . . final passage" of the ordinance. (*Id.*, § 9235; see also *id.*, § 9141, subd. (b) [same for county ordinances].) If a petition with sufficient signatures is filed within the time limit, "the effective date of the ordinance shall be suspended and the legislative body shall reconsider the ordinance." (*Id.*, § 9237.) If the legislature does not "entirely repeal the ordinance against which the petition is filed," the legislative body must submit the ordinance to the voters at a general election or a special election. (*Id.*, § 9241.) The Elections Code conveys that "[t]he ordinance shall not become effective until a majority of the voters voting on the ordinance vote in favor of it." (*Ibid.*)

These provisions best fit a straightforward interpretation of what happens when electors use a referendum to reject a statute enacted by the Legislature. To wit: the referendum does not revive a superseded statute. Instead, it rejects a statutory alteration before it becomes law. (See Elec. Code, § 9241; *Assembly v. Deukmejian* (1982) 30 Cal.3d 638, 656 (*Deukmejian*) ["As the Secretary of State has pointed out, 'In a REFERENDUM, VOTERS are asked to APPROVE the BILL which the Legislature has enacted ("YES" VOTE) or to DISAPPROVE ("NO"

---

[2]    In a city with 1,000 or less registered voters, at least 25 percent of the population or 100 people, whichever is fewer, must sign the petition. (Elec. Code, § 9237.)

VOTE) . . . . The question which is put to the voters is "SHALL (the bill) BECOME LAW? (YES or NO)." ' (Memo. from Sect. of State's office to county clerks and registrars of voters (Sept. 24, 1981).) Approval of the referendum is approval of the bill"].) In the same way, because a zoning ordinance is "stayed from taking effect until it has been approved by the voters at the required election" (*Deukmejian*, at p. 656; Elec. Code § 9237), a referendum does not work a change in the zoning ordinance. It prevents such a change from occurring.

Moreover, we find no sign that it was the Legislature's purpose to prevent electors from using their referendum power against objectionable zoning ordinance alterations. The Legislature was in a position to be well aware of the local referendum power when it added subdivision (c) to section 65860 in 1973. (Stats. 1973, ch. 120, § 6.) The power of referendum was added to the California Constitution in 1911 (*Associated Home Builders etc., Inc. v. City of Livermore*, *supra*, 18 Cal.3d at p. 591), and the statutory predecessors to the current provisions governing city referendums are to a great extent similar to what they were in 1973 (see, e.g., Elec. Code, former § 4052 [now Elec. Code, § 9241]; Stats. 1969, ch. 940, § 14, p. 1881). So we can presume the Legislature added this provision against the backdrop of knowledge that local referendums might be used to challenge zoning ordinance amendments that involve discretionary choices between different options. (See *People v. Pieters* (1991) 52 Cal.3d 894, 907 ["we presume that the Legislature has knowledge of all prior laws and enacts and amends statutes in light of those laws"].)

The situation here also contrasts with prior cases. This case does not involve a "clear showing" that the Legislature contemplated preemption of local electors' referendum power. This situation is not one where state law mandates a certain result with no discretion or that involves an "administrative" task. (See *Simpson v. Hite* (1950) 36 Cal.2d 125, 133-135 [finding referendum power

12

unavailable to challenge a statute requiring the board of supervisors to find suitable accommodation for state courts]; *Housing Authority of City of Eureka v. Superior Court in and for Humboldt County* (1950) 35 Cal.2d 550, 553, 558 [holding local approval of public housing agency's application for a federal loan to be an administrative action].) Where the local government can still implement one of multiple approaches to achieve consistency between the zoning ordinance and the general plan while complying with section 65860, subdivision (c), the zoning ordinance is best understood as the product of a discretionary policy choice about the proper use of the land. Nor is this a case where the state statute gives discretion solely to the legislative body, to the exclusion of the electors. (See *Committee of Seven Thousand*, *supra*, 45 Cal.3d at pp. 511-512.)

Indeed, section 65860, subdivision (c) imposes a mandate that the zoning ordinance be made consistent with the general plan. But it conspicuously fails to specify who decides how that consistency is achieved. Without evidence of a contrary purpose, we presume it was not within the ambit of the Legislature's goals to exclude electors from the zoning ordinance amendment process. (See *DeVita*, *supra*, 9 Cal.4th at p. 775 [" '[W]e will presume, absent a clear showing of the Legislature's intent to the contrary, that legislative decisions of a city council or board of supervisors . . . are subject to initiative and referendum' "].) We have previously observed that the purpose of section 65860, subdivision (c) "is to ensure an orderly process of bringing the regulatory law into conformity with a new or amended general plan." (*Lesher*, *supra*, 52 Cal.3d at p. 546.) We see no reason why an orderly process in this vein must categorically exclude a referendum.

That such an "orderly process" can encompass use of a referendum becomes even clearer when we compare its use here to other situations. Consider, for example, a vote in a local jurisdiction's legislative body that goes against a

13

particular zoning ordinance amendment, or a mayor's veto of such an ordinance if the city has granted the mayor such power. (See *Referendum Committee v. City of Hermosa Beach* (1986) 184 Cal.App.3d 152, 157 ["The referendum process allows the voters to *veto* statutes and ordinances enacted by their elected legislative bodies before those laws become effective" (italics added)].) Nothing in section 65860 indicates that members of a municipality's legislative body must vote for a particular zoning ordinance amendment. Indeed, the ordinance in this case garnered two dissenting votes. Nor is there any indication that a "mayor's veto" would be ineffective in blocking a zoning ordinance amendment. A legislative body, a vetoing mayor, or electors — by referendum — can properly prevent the selection of one general-plan-compliant zoning ordinance when others are available.

To hold otherwise would eviscerate local electors' referendum power. The City and River Park argue local electors could have challenged the prior alterations to the general plan by referendum, or changed the general plan or the zoning ordinance by initiative (so long as the zoning ordinance matches the general plan). Although these alternative options provide some avenue for relief, a referendum can play an important and distinct role — as it does in this case. A change to the general plan may in many cases reveal mere generalities, consigning to relative ignorance local electors unaware of the City's plans for the property. And electors may agree with a general plan modification, but not the particular zoning amendment used to conform to the general plan. So the ability to bring a referendum to challenge a general plan amendment may not always make up for the lack of availability of a referendum challenging a later, more specific zoning ordinance amendment. Unlike an initiative, which acts as standalone legislation to repeal the already enacted zoning ordinance amendment, a referendum petition satisfying the statutory prerequisites suspends the effective date of the challenged

14

zoning ordinance amendment until a majority of voters approve the amendment. (Elec. Code, §§ 9237, 9241.) As a result, a piece of property may undergo development, or legal rights may vest in development of the property before an initiative can be brought to a vote. Given these considerations, construing section 65860, subdivision (c) to contemplate referendum challenges avoids unduly cramping the referendum power and implicitly restricting its relevance. (Cf. *California Cannabis*, *supra*, 3 Cal.5th at p. 936 [holding that we must resolve doubts about the initiative power in its favor and "narrowly construe provisions that would burden or limit the exercise of that power"].)

These considerations lead us to disapprove of the reasoning in *deBottari v. City of Norco*, *supra*, 171 Cal.App.3d 1204 and *City of Irvine v. Irvine Citizens Against Overdevelopment*, *supra*, 25 Cal.App.4th 868. In *deBottari*, the Court of Appeal held a referendum rejecting a zoning ordinance to be invalid *ab initio* because the voters did not have the power to "enact an invalid zoning ordinance" even if other zoning designations not obviated by the referendum could comply with the general plan. (*deBottari*, at p. 1212.) What the *deBottari* court misapprehended is why certain ordinances are invalid "*ab initio*." An initiative or city council measure rendering a zoning ordinance noncompliant with the general plan is invalid because section 65860, subdivision (a) preempts — and thereby forbids — the existence of that newly enacted ordinance. But although a referendum rejecting a zoning ordinance amendment does, for a temporary period, result in the continuation of an out-of-compliance zoning ordinance, it does so as part of the exception to section 65860, subdivision (a) found in subdivision (c).

The *deBottari* court's decision was motivated, to some extent, by the general plan's role "as the 'constitution for all future developments within the City.' [Citation.]" (*deBottari*, *supra*, 171 Cal.App.3d at p. 1212; see also *Lesher*, *supra*, 52 Cal.3d at p. 540 [describing the general plan as "a 'constitution,' or

15

perhaps more accurately a charter for future development"].) Leveraging this logic, the City and River Park argue that allowing a referendum to reject a zoning ordinance chosen by the local government to achieve compliance with the general plan will undermine the purposes of the plan. According to the City and River Park, such a result would "lock inconsistent zoning in place for months if not years" and would create substantial uncertainty about how that land can be used in the interim. Yet our task is — where reasonably possible — to protect the people's reserved legislative power, including the power to bring a referendum. (Cf. *California Cannabis*, *supra*, 3 Cal.5th at pp. 933-934.) To the extent possible, we also seek to reconcile the statutory provisions governing general plans in the Government Code with the Constitutional and statutory right to referendum. (*Tripp v. Swoap* (1979) 17 Cal.3d 671, 679 ["two codes . . . 'must be read together and so construed as to give effect, when possible, to all the provisions thereof' "]; cf. *DeVita*, *supra*, 9 Cal.4th at p. 778 ["the question is not whether Elections Code section 9111 in some fashion misconstrues the planning law, but rather how that statute can be *reconciled with* the planning law"].) We can harmonize these provisions by applying section 65860, subdivision (c)'s explicit reference to a reasonable period of time during which the general plan and zoning ordinance may be inconsistent after a general plan amendment. In contrast, the City and River Park essentially urge us to find that the policies underlying general plans are of such great importance that they require us to eliminate the right to referendum. That would not be harmonization, but victory of general plans over the referendum right. Such a result would be contrary to our approach to statutory interpretation, and our liberal construction of the people's reserved power of referendum.

Moreover, local governments may be able to prevent situations where the zoning ordinance does not comply with the general plan for an extended period of time. The Government Code, for example, states a policy of "concurrently

16

process[ing] applications for general plan amendments and zoning changes . . . so as to expedite processing of such applications." (§ 65862.) If local governments simultaneously alter the general plan and the zoning ordinance, then no inconsistency between the general plan and zoning ordinance would occur during the pendency of a referendum against those simultaneous changes. Indeed, the need to avoid this risk may incentivize compliance with the Government Code's stated policy. In addition, local governments may be able to develop creative strategies for implementing zoning ordinances that would obviate the need for successive referendums if electors disagree with the local government's later choices for a property's zoning designation.

The City and River Park maintain that giving effect to the referendum will engender awkward questions about what constitutes a "reasonable time" for a zoning ordinance to remain out of compliance with a general plan. An implication of this argument is that when a referendum leaves in its wake an inconsistency between a zoning ordinance and a general plan, the referendum would become invalid if it would cause an "unreasonable" amount of time to transpire. But we can resolve this case without sorting out whether section 65860's reasonable time requirement can ever limit the people's ability to bring a referendum. Whatever "reasonable" might mean in subdivision (c), we find no basis for reading into this term such a specific limitation that it effectively prohibits the temporary inconsistency required to hold a single referendum, or to align the zoning ordinance with the general plan in a manner consistent with the referendum's result. The statute does not provide a benchmark for what is a "reasonable time" to amend the zoning ordinance, and nothing in its explicit provisions, structure, or other indicia of its purpose suggest that the "reasonable time" reference is best construed as effectively prohibiting a straightforward referendum challenge to a zoning ordinance. (See *California Cannabis*, *supra*, 3 Cal.5th at pp. 933-934.)

17

The City points out how the Senate version of subdivision (c) to section 65860 — the one ultimately enacted — was adapted from a competing Assembly Bill that would have required a zoning ordinance to match the general plan within 90 days.  Even if we assigned particular importance to this morsel of legislative history, the most plausible inference arising from it would cut against the City's argument:  the Legislature failed to enshrine the 90-day limit in the statute, and left no basis for concluding that the only reasonable meaning of "reasonable time" is a 90-day limit restricting the people's referendum power.

In addition, the timing of subdivision (c)'s addition to section 65860 provides some indication that the Legislature can reasonably be understood to have been aware of the delays that might ensue from a referendum.  Currently, a referendum stays the effective date of the zoning ordinance, and requires the issue be decided at a special or general election more than 88 days after the legislative body orders an election on the issue.  (Elec. Code, § 9241.)  At the time the Legislature added subdivision (c) to Government Code section 65860 in 1973, the Elections Code contained the predecessor to Elections Code section 9241, Elections Code former section 4052.  That provision required a referendum to be either decided at a general election 45 days after the legislative body orders the election, or at a special election occurring "not less than 60 nor more than 75 days after the date of the order."  (Stats. 1969, ch. 940, § 14, p. 1881.)  Moreover, in the same legislative session as the 1973 amendment to Government Code section 65860, the Legislature extended the time for a special election to occur not less than 74 and not more than 89 days after the legislative body's order.  (Stats. 1973, ch. 167, § 13, p. 470.)  This is all to say, when the state Legislature added the "reasonable time" requirement of section 65860, subdivision (c), we must presume it was aware that the referendum process would create delays similar to the current

18

88 day waiting period to hold an election. (See *People v. Pieters*, *supra*, 52 Cal.3d at p. 907.)

This conclusion is supported by previous interpretations of other provisions that involve a "reasonable time." Former section 53051, for example, made local agencies liable for injuries caused by "dangerous or defective condition[s] of public property" if the government had notice of the condition and "[f]or a reasonable time after acquiring knowledge or receiving notice, failed to remedy the condition . . . ." (Former § 53051.) The Court of Appeal determined that this "reasonable time" determination was a context-dependent question for the trier of fact. (*Bady v. Detwiler* (1954) 127 Cal.App.2d 321, 335.) Similarly, for contracts and the law of sales, the question of whether a "reasonable time" has passed is a question that depends on the circumstances. (*Whitfield v. Jessup* (1948) 31 Cal.2d 826, 831 [" 'It may be taken as axiomatic that what constitutes a reasonable time must be determined from the particular circumstances in the individual case' "]; see also *Fromm v. Sierra Nevada Silver Min. Co.* (1882) 61 Cal. 629, 631–632.) What these examples demonstrate for the purposes of this case is that we may sensibly presume the Legislature could have contemplated that a "reasonable time" would vary based on circumstance when it added subdivision (c) to section 65860. The people's power of initiative and referendum constitutes a background principle of constitutional and statutory law that dates back to the early 1900s. Given the fundamental role these powers play not only in local jurisdictions but in the legislative process across the state, we can reasonably presume that the Legislature enacted subdivision (c) with sufficient information to know that the referendum power might be used to challenge a zoning amendment. In this institutional and historical background, the context-dependent reference to a "reasonable time" in subdivision (c) is best read as compatible with use of referendums, rather than as an oblique way to specifically exclude the use of

19

referendums.  So we conclude that a "reasonable time" includes the time necessary to bring at least one referendum challenge, and to rectify the inconsistency between the zoning ordinance and the general plan in a manner that complies with the referendum.

III.

Even if a similar referendum could be valid in some circumstances, the City and River Park insist a problem existed with this particular referendum.  The trial court was right to remove this referendum from the ballot, they posit, because the local government would have found it impossible to comply with the referendum in light of the specific general plan that existed at the time.  They assert that the referendum sought to prevent a change in the property's zoning designation from industrial to commercial, not merely to prevent a zoning designation that allows hotels.  Implementing a commercial zoning designation prohibiting hotels from being built on the property, they claim, would comply with the general plan but not the referendum.  In the alternative, they contest whether a commercial zoning designation is available for this particular property that forbids hotel use.  If either of these assertions is true, they contend the referendum would trigger a one-year delay in implementing any commercial zoning designation under Elections Code section 9241.

Elections Code section 9241 states that if a referendum is successful, "the ordinance shall not again be enacted by the legislative body for a period of one year after the date of its . . . disapproval by the voters."  (Elec. Code, § 9241.)  Elections Code section 9241's one-year prohibition extends to any subsequent ordinance that is "essentially the same" as the original ordinance.  (Cf. *Deukmejian*, *supra*, 30 Cal.3d at p. 678 [contrasting ordinances that are "essentially the same" with those that are "essentially different"]; *Lindelli v. Town of San Anselmo* (2003) 111 Cal.App.4th 1099, 1110 [discussing whether a

20

subsequent ordinance is "essentially similar" in the context of the stay imposed during the pendency of a referendum].) The City and River Park believe this means the referendum is invalid because a one-year delay would not comply with Government Code section 65860's "reasonable time" requirement.

But this is a question we need to reach only if the City and River Park had in fact shown it would be impossible for the City to comply with the general plan and a successful referendum, thus triggering Elections Code section 9241's one-year delay. They have failed to do so.

First, we cannot conclude that the referendum's purpose was to prevent a change from industrial to commercial zoning for the property. The City and River Park argue that the trial court made a factual finding to this effect. They assert that the Court of Appeal gave insufficient deference to this factual finding by asserting that "[t]he stated purpose of the referendum was to prevent the development of a hotel on the parcel." (*City of Morgan Hill*, *supra*, 12 Cal.App.5th at p. 38.) The City and River Park's characterization of the trial court's findings is incorrect. They cite to a portion of the trial court's order in the instant case. But the trial court's order merely finds that the referendum would leave in place a zoning designation that does not comply with the general plan and would be an invalid "enact[ment]" under *deBottari*. We perceive no "factual finding" about the purpose of the referendum to which the Court of Appeal gave insufficient deference.

The City and River Park also point to an unpublished ballot measure argument. That argument purportedly would have been presented to voters if the referendum had not been stayed. Although we may consider ballot arguments "to ascertain the voters' intent" (*Delaney v. Superior Court* (1990) 50 Cal.3d 785, 801), a lone unpublished ballot argument is insufficient for us to discern what the voters' purpose would be should they approve the referendum. So this

21

unpublished ballot argument is insufficient to make the "clear showing of invalidity" necessary to remove a referendum from the ballot before a vote even occurs. (*Brosnahan v. Eu* (1982) 31 Cal.3d 1, 4 (*Brosnahan*); *Costa v. Superior Court* (2006) 37 Cal.4th 986, 1005.)[3]

The City argues in the alternative that the Court of Appeal's reasoning relies on the availability of other general-plan-compliant zoning designations that also comply with the referendum, when no such zoning designations are available for the property. Hotel Coalition contends that this argument is forfeited because the City and River Park did not contest the availability of other zoning designations in the trial court or the Court of Appeal until the petition for rehearing. (See *Midland Pacific Building Corp. v. King* (2007) 157 Cal.App.4th 264, 276 ["It is much too late to raise an issue for the first time in a petition for rehearing"]; see also *Reynolds v. Bement* (2005) 36 Cal.4th 1075, 1092.) Indeed, because the issue was uncontested, the Court of Appeal found that "it is undisputed that City could have selected any of a number of consistent zoning districts to replace the parcel's inconsistent zoning . . . ." (*City of Morgan Hill*, *supra*, 12 Cal.App.5th at p. 41.) Regardless, we do not find the issue forfeited, because *deBottari* established that the availability of other zoning designations was irrelevant. The Court of Appeal's decision here constituted a change in law that placed, for the first time, the City on notice that it needed to contest the availability of alternative zoning designations. The City preserved the

---

[3] Hotel Coalition concedes the referendum's purpose was to prevent hotel use. There are multiple general-plan-compliant zoning designations that *allow* hotel use, and so without Hotel Coalition's concession, and the lack of evidence about voter intent before the court, the referendum likely could not be invalidated. But given Hotel Coalition's concession, we assume for the purposes of this opinion that zoning designations allowing hotel use would not comply with the referendum.

issue by challenging that contention in a petition for rehearing and in its briefing before this court.

Twelve separate commercial zoning designations are available in the City, six of which allow use by hotels. Yet while neither party disputes the existence of these designations, the City contends that five of the remaining six designations prohibiting hotels cannot possibly apply to the property at issue here, and that it is "questionable" whether the last remaining commercial zoning designation was available for the property. These arguments were not fully explored below. Moreover, neither party fully addressed the possibility that the City would be able to *add* zoning designations that would comply with the general plan and referendum, even if no *current* zoning designation would comply with the general plan and the referendum. Nor have the City and River Park addressed whether the City would be able to alter the general plan in response to the referendum. Although we held in *Lesher* that an initiative instituting an invalid zoning ordinance cannot be used to alter a general plan (*Lesher*, *supra*, 52 Cal.3d at p. 541), we have not addressed whether section 65860 would require invalidation of a referendum where a county or city cannot change the zoning ordinance, but can alter the general plan to comply with the referendum and section 65860. This inquiry may be affected by the facts of a given case. We have not considered whether invalidation is required when, as is apparently the case here, a general plan is amended to accommodate a specific development, the zoning amendment that is the subject of a referendum is not adopted concurrently with the general plan amendment, and the referendum manifestly disapproves of the use the general plan amendment was designed to accommodate.

Because of these unresolved questions not fully briefed in the case before us, we remand to the trial court for it to determine whether existing alternative zoning designations would be viable for the property postreferendum, and if not,

what would prevent the City from creating a new zoning designation that would be consistent with both the general plan and a successful referendum. If there is at least *some* avenue for the City to change the zoning ordinance to comply with the general plan within a reasonable time, the referendum must go forward as there has been no "clear showing of invalidity." (*Brosnahan*, *supra*, 31 Cal.3d at p. 4.) If necessary, the trial court may also address whether a referendum can be invalidated where the City has the ability to amend the general plan in order to conform the plan to the zoning designation that the referendum would leave in place.

IV.

State law may preempt the power of referendum where there is a definite indication of the Legislature's purpose to do so. Not so in this case. We can divine no indication that such preemption was the Legislature's intended purpose. While the enactment of a zoning ordinance that does not comply with a general plan is invalid *ab initio*, a successful referendum challenging a zoning ordinance amendment seeking to make the zoning ordinance consistent with a general plan amendment falls within the exception created by section 65860, subdivision (c) — at least where other consistent zoning designations could have been selected instead. Subdivision (c) allows inconsistent zoning for a "reasonable time," and a single referendum and responsive government action do not render the amount of time it takes to reach consistency "unreasonable." Given our duty to protect the referendum power, we conclude the Court of Appeal was correct to hold that a referendum can be used to challenge a zoning ordinance amendment that attempts to make the zoning ordinance consistent with an amended general plan. But it is not clear if other zoning designations were available for the property here, or whether the City has other means to comply with a successful referendum while making the zoning ordinance and the general plan consistent with one another. So

24

we vacate the judgment of the Court of Appeal and remand the case to the Court of Appeal with directions to remand to the trial court to address these questions.

**CUÉLLAR, J.**

**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**CHIN, J.**
**CORRIGAN, J.**
**LIU, J.**
**KRUGER, J.**
**MARGULIES, J. \***

_____
\*      Associate Justice of the Court of Appeal, First Appellate District, Division One, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

## CONCURRING OPINION BY CHIN, J

I fully agree with the majority opinion. It is a close question whether a remand is necessary to determine "if other zoning designations were available for the property here, or whether the City has other means to comply with a successful referendum while making the zoning ordinance and the general plan consistent with one another." (Maj. opn., *ante*, at p. 25.) It certainly *appears* the City of Morgan Hill (the City) has the means to make the zoning ordinance and general plan consistent with one another if the referendum succeeds.

Even if other zoning designations for the property are not currently available, I see no obvious impediment to the City simply amending the zoning ordinance to achieve the necessary consistency. Alternatively, the City could amend the general plan to make it once again consistent with the zoning ordinance. The City amended the general plan previously to permit a hotel to be built on the property. If the referendum succeeds, it seems the City could simply change the general plan back the way it was.

Nevertheless, because the briefs have not focused on this precise point, I agree that a remand is appropriate. If the City chooses to pursue the matter, it may argue on remand that its authority in land use planning is so limited that it could not possibly make the zoning ordinance and the general plan consistent should the referendum succeed. The question, however, is not whether the City *wishes* to do what is necessary to comply with a successful referendum. It clearly does not

wish to do so.  The question is whether it would be *impossible* for the City to make the general plan and zoning ordinance consistent should the referendum succeed.

**CHIN, J.**

**I CONCUR:**

**CANTIL-SAKAUYE, C. J.**

2

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** City of Morgan Hill v. Bushey

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 12 Cal.App.5th 34
**Rehearing Granted**

_____

**Opinion No.** S243042
**Date Filed:** August 23, 2018

_____

**Court:** Superior
**County:** Santa Clara
**Judge:** Theodore C. Zayner

_____

**Counsel:**

Law Office of Asit Panwala, Asit S. Panwala; Toch Law Firm and J. Randall Toch for Real Party in Interest and Appellant.

Donald Alan Larkin, City Attorney; Leone & Alberts, Katherine A. Alberts, Louis A. Leone and Ioana Mondescu for Plaintiff and Respondent.

Burke, Williams & Sorensen and Thomas B. Brown for League of California Cities as Amicus Curiae on behalf of Plaintiff and Respondent.

Orry B. Korb and James R. Williams, County Counsel, Steve Mitra, Assistant County Counsel, and Danielle Luce Goldstein, Deputy County Counsel, for Defendant and Respondent Shannon Bushey, as Registrar of Voters for Santa Clara County.

Law Offices of Gary M. Baum and Scott D. Pinsky for Defendant and Respondent Irma Torrez, as City Clerk for City of Morgan Hill.

Berliner Cohen, Jolie Houston and Thomas P. Murphy for Real Party in Interest and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Asit S. Panwala
Law Office of Asit Panwala
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
(415) 766-3526

Katherine A. Alberts
Leone & Alberts
2175 North California Boulevard, Suite 900
Walnut Creek, CA 94596
(925) 974-8600

Jolie Houston
Berliner Cohen
Ten Almaden Boulevard, Eleventh Floor
San Jose, CA 95113-2233
(408) 286-5800