Filed 3/7/19

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| DAVE SOUTHCOTT et al., | D074324 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. 37-2018-0023393-CU-WM-CTL) |
| JULIAN-CUYAMACA FIRE PROTECTION DISTRICT et al., | |
| Defendants and Respondents; | |
| COUNTY OF SAN DIEGO et al., | |
| Real Parties in Interest and Respondents. | |

APPEAL from a judgment of the Superior Court of San Diego County, Kenneth J. Medel, Judge.  Affirmed.

Law Office of Craig A. Sherman and Craig A. Sherman for Plaintiffs and Appellants.

McDougal, Love, Boehmer, Foley, Lyon & Canlas, Morgan L. Foley and Gena B. Burns for Defendants and Respondents Julian-Cuyamaca Fire Protection District, Jack Shelver and Marcia Spahr.

No appearance for Real Party in Interest and Respondent County of San Diego.

Colantuono, Highsmith & Whatley, Holly O. Whatley and Aleks R. Giragosian, for Real Party in Interest and Respondent San Diego County Local Agency Formation Commission.

Pursuant to the Cortese-Knox-Hertzberg Local Government Reorganization Act of 2000 (Reorganization Act; Gov. Code, § 56000 et seq.), the board of directors of the Julian-Cuyamaca Fire Protection District (District) passed a resolution to apply to the San Diego Local Agency Formation Commission (Commission) to dissolve the District. A group of Julian residents (plaintiffs) sought to prevent the District's dissolution by presenting a referendum petition to the District board (see Elec. Code, §§ 9144, 9340). The District did not act on the referendum petition, and the trial court denied plaintiffs' petition for writ of mandate to set an election on the District's resolution.

The issue presented in this appeal is whether the District's resolution to apply to the Commission for a dissolution may be challenged through the voter referendum process. We conclude the District's resolution is not subject to referendum because, among other reasons, the Reorganization Act prescribes the exclusive method for dissolving, and/or protesting the proposed dissolution of, a fire protection district (Health & Saf. Code, § 13812; Gov. Code, §§ 56100, 56021) and the resolution was

2

administrative in nature under the Reorganization Act.  Accordingly, the trial court did not err, and the judgment is affirmed.

## BACKGROUND

The District was formed pursuant to the Fire Protection District Law of 1987 (Fire District Law; Health & Saf. Code, § 13800 et seq.), to provide fire protection and emergency medical services to the unincorporated communities of Julian and Lake Cuyamaca.  Plaintiffs consist of volunteer firefighters, voters, and/or residents of Julian.

On April 10, 2018, the board of directors of the District passed a "resolution of application" to dissolve the District (Resolution).  The Resolution, which recites that it is made "pursuant to the . . . Reorganization Act," authorizes an application to the Commission for approval of a proposed dissolution plan wherein the territory served by the District would be served by the County of San Diego upon the District's dissolution. After adopting the Resolution, the District applied to the Commission to approve its proposed dissolution plan, submitting the Resolution with its application materials.

Within 30 days of adopting the Resolution, the District received a referendum petition to rescind the Resolution or have the Resolution set for an election under California's referendum process (Referendum Petition).  The Referendum Petition ostensibly complied with voter signature requirements under the Elections Code.[1]  The District took no action to rescind or withdraw the Resolution or set the matter for election.

---

[1]     See Elections Code section 9141 et seq.

3

In May 2018, plaintiffs filed a petition for writ of mandate in superior court to compel the District to either rescind the Resolution or set the matter for election. In June 2018, following a hearing, the court denied plaintiffs' petition for writ of mandate. The court decided that the District's Resolution was "not subject to referendum" in light of the state's system of regulation over district dissolutions. Judgment was entered accordingly, and this appeal followed.[2, 3]

## DISCUSSION

I.      *The Reorganization Act*

A.      *Background and Legislative Intent*

In the Reorganization Act, "the Legislature enacted a broad statutory scheme covering changes of organization of districts as well as cities." (*Las Tunas Beach Geologic Hazard Abatement Dist. v. Superior Court* (1995) 38 Cal.App.4th 1002, 1007 (*Las Tunas Beach*).) Government Code section 56100 states in pertinent part: "[T]his division provides the sole and exclusive authority and procedure for the initiation,

---

[2]     In July 2018, plaintiffs also filed a petition for writ of mandate in this court to have the Resolution placed on the November 2018 general election ballot and to stay any further efforts to dissolve the District. Plaintiffs' petition for writ of mandate was denied.

[3]     While the appeal was pending, plaintiffs notified this court that they and the District had agreed to a tentative settlement that might obviate the need for our decision. None of the parties contend this case is moot, i.e., that no practical relief may be provided by a decision. Moreover, even when a case is technically moot, the court has inherent power to decide it where the issue presented is important and of continuing interest. (*San Diego Housing Com. v. Public Employment Relations Bd.* (2016) 246 Cal.App.4th 1, 7 fn. 4.) We find this case appropriate for us to retain and decide regardless of the parties' settlement status.

4

conduct, and completion of changes of organization and reorganization for cities and districts."  A change of organization is defined to include any of the following:  city incorporation and disincorporation, district formation and *dissolution*, annexation to or detachment from a city or district, consolidation of cities or special districts, and a merger or establishment of a subsidiary district.  (Gov. Code, § 56021.)  District dissolution is defined as "the disincorporation, extinguishment, or termination of the existence of a district and the cessation of all its corporate powers, except as the commission may otherwise provide . . . or for the purpose of winding up the affairs of the district." (Gov. Code, § 56035.)

The "Legislature has occupied the field with respect to changes of organizations of districts, thereby preempting local law[.]" (*Las Tunas Beach, supra*, 38 Cal.App.4th at p. 1009, italics omitted.)  Preemption is based on "the policy of the state to encourage orderly growth and development which are essential to the social, fiscal, and economic well-being of the state."  (Gov. Code, § 56001.)  The Reorganization Act was designed to halt the proliferation of special districts, contain urban sprawl, deal with annexations, and "guard against wasteful duplication of services."  (*Friends of Mount Diablo v. County of Contra Costa* (1977) 72 Cal.App.3d 1006, 1011 (*Friends of Mount Diablo*).)

Under the Reorganization Act, a local agency formation commission (LAFCO) exists within each county.  (Gov. Code, §§ 56027, 56325.)  It is LAFCO's duty to "review and approve with or without amendment, wholly, partially, or conditionally, or disapprove proposals for changes of organization or reorganization . . . ."  (Gov. Code, § 56375, subd. (a)(1); see *Fallbrook Sanitary Dist. v. San Diego Local Agency Formation*

5

*Com.* (1989) 208 Cal.App.3d 753, 760 [LAFCO may make both additions and deletions to proposals so long as the general nature of subject matter is unchanged].)

Proceedings before LAFCO "for a change of organization or a reorganization may be initiated by petition or by resolution of application . . . ." (Gov. Code, § 56650.) A resolution of application is a resolution adopted by the legislative body of an affected local agency proposing a change of organization. (Gov. Code, § 56654.)

After approving a proposed change of organization, LAFCO conducts further proceedings on the proposal, such as holding a noticed hearing. (Gov. Code, § 57000 et seq.) At the hearing, LAFCO receives any protests, objections, or evidence on the proposal. (Gov. Code, § 57050, subd. (b).)

In the case of a proposed dissolution, LAFCO determines the value of written protests that may have been filed, and if the protests are not in the majority, LAFCO, by resolution, orders the dissolution, with or without the confirmation of voters depending on whether certain requirements are met. (Gov. Code, §§ 57052, 57077.1, 57078.)

B.      *Reconciling the Reorganization Act with Other Statutory Schemes That Address Particular Types of Districts*

The Reorganization Act "is not the sole statutory scheme pertaining to district formation. It shares the field with other such statutory schemes applicable to particular types of districts." (*Las Tunas Beach, supra*, 38 Cal.App.4th at p. 1009; *id.* at pp. 1009-1010 [discussing statutory scheme found in Public Resources Code that authorizes the formation of geologic hazard abatement districts].) When a statutory scheme contains its own more specific district formation procedures, then, based on settled rules of statutory

6

construction, the special provisions control over the more general provisions of the Reorganization Act relating to district formation. (*Id.* at pp. 1010-1011; but see Gov. Code, § 56100, subd. (b) [if there is a *conflict* in procedural requirements, then the Reorganization Act requirements prevail].) The Reorganization Act "co-exists with other statutory schemes which specifically address the formation of particular types of districts." (*Las Tunas Beach*, at p. 1011 [providing as examples, mosquito abatement and vector control districts and sanitary districts].) Conversely, when a specified statutory scheme does not contain its own dissolution provisions, "the dissolution procedures of [the Reorganization Act], which pertain to districts generally, control . . . ." (*Id.* at p. 1012.)

II.      *The Fire District Law Mandates Compliance with the Reorganization Act for any Change of Organization, Including Dissolutions*

The Fire District Law authorizes the formation of fire protection districts to provide for fire protection services on a local level. (Health & Saf. Code, §§ 13801, 13815 et seq.) The statute contains certain formation procedures that complement procedures of the Reorganization Act. (See, e.g., Health & Saf. Code, §§ 13815 et seq., 13819 [signed petition shall be filed with LAFCO], 13821 [resolution of application to form a fire district shall be filed with LAFCO].)

However, the Fire District Law does not contain *any* specific provisions covering dissolutions of fire protection districts, except to mandate compliance with the Reorganization Act. Health and Safety Code section 13812 provides as follows: "The . . . Reorganization Act . . . shall govern any change of organization or

7

reorganization of a district." As we have noted, a change of organization is defined to include the dissolution of a district. (Gov. Code, § 56021.) The Legislature has thus evidenced its intention that the Reorganization Act provides the exclusive method for dissolving a fire protection district. (See *Las Tunas Beach, supra*, 38 Cal.App.4th at p. 1012.)

III. *The Right of Referendum*

The California Constitution, article 2, section 9, subdivision (a) provides: "The referendum is the power of the electors to approve or reject statutes or parts of statutes except urgency statutes, statutes calling elections, and statutes providing for tax levies or appropriations for usual current expenses of the State." Article 2, section 11, subdivision (a) of the Constitution provides: "Initiative and referendum powers may be exercised by the electors of each city or county under procedures that the Legislature shall provide."

"It is the 'duty of the courts to jealously guard' the people's rights of initiative and referendum. [Citation.] But a fundamental principle of referendum law is that a referendum may be used to review only legislative acts and not executive or administrative acts of a local government. [Citations.] 'Legislative acts . . . which establish general policies and objectives, and the ways and means of accomplishing them, are subject to the referendum process.' [Citation.]" (*Worthington v. City Council of Rohnert Park* (2005) 130 Cal.App.4th 1132, 1140 (*Worthington*).)

Generally, an act is legislative in nature if it prescribes a new policy or plan; it is administrative in nature if it merely pursues a plan already adopted by the legislative

8

body itself, or some power superior to it. (*Worthington, supra*, 130 Cal.App.4th at pp. 1140-1141; *Ferrini v. City of San Luis Obispo* (1983) 150 Cal.App.3d 239, 249 (*Ferrini*) [decision to annex land to city could not be challenged by initiative process].)

"When implementing a plan adopted by a superior power, a city acts in an administrative capacity. 'Acts of a local governing body which, in a purely local context, would otherwise be legislative and subject to referendum may, however, become administrative "in a situation in which the state's system of regulation over a matter of statewide concern is so pervasive as to convert the local legislative body into an administrative agent of the state." ' (*Yost v. Thomas* (1984) 36 Cal.3d 561, 570.) When a local governments [*sic*] discretion is 'largely preempted' by statutory mandate its action is administrative and not subject to referendum." (*Worthington, supra*, 130 Cal.App.4th at p. 1141; *Friends of Mount Diablo, supra*, 72 Cal.App.3d at pp. 1010-1011.)

IV. *The District's Resolution of Application to Dissolve the Julian-Cuyamaca Fire Protection District Is Not Subject to the Referendum Process*

Based on the foregoing principles, we conclude the District's "resolution of application" (Gov. Code, § 56650), which proposed a plan of dissolution for the Commission to consider, is not subject to the referendum process.

As recognized many years ago in *Friends of Mount Diablo, supra*, 72 Cal.App.3d at pages 1010-1011, state regulation over district dissolutions is pervasive. Although the District's Resolution might be characterized as a legislative act in a purely local context, it is not legislative when viewed in the context of the state's regulation over the dissolution of districts. The District must apply to the Commission with a proposed

9

dissolution plan and cannot alter the plan without Commission approval. The Commission—not the District—holds the power to "review and approve with or without amendment, wholly, partially, or conditionally, or disapprove" the District's proposal. (Gov. Code, § 56375, subd. (a)(1).) The Commission may *itself* initiate the dissolution of a district. (Gov. Code, § 56375, subd. (a)(2)(B).) When viewed in context, the Resolution is not a legislative act subject to referendum. (*Friends of Mount Diablo, supra*, 72 Cal.App.3d at p. 1010 [the Reorganization Act is "an encompassing regulation over a matter of such statewide concern as to convert the local legislative body into an administrative agent of the state"].)

Moreover, the Reorganization Act contains detailed provisions regarding the method of protesting a proposed dissolution of a district and when elections are required. (See, e.g., Gov. Code, §§ 57051, 57077.1, 57078.) "Where the Legislature has enacted a comprehensive regulatory system with express provisions for elections under limited conditions we may infer a negation of election under all other circumstances." (*Ferrini, supra*, 150 Cal.App.3d at p. 247.) If a district's resolution of application were subject to referendum, opponents could thwart the Reorganization Act's method for considering and challenging dissolution proposals. Use of the referendum process in the manner proposed by plaintiffs "interferes with and frustrates state [dissolution] procedures and cannot [be] sustained." (*L.I.F.E. Committee v. City of Lodi* (1989) 213 Cal.App.3d 1139, 1148 [local attempt to require a vote before commencement of annexation interfered with state-established process for considerations of annexations].)

10

Plaintiffs argue that the District's "initial" decision to apply to the Commission for dissolution is distinct from the process of applying to the Commission for dissolution and that the initial decision should be subject to referendum. We are not persuaded by plaintiffs' argument. A "resolution of application," like the one passed here by the District, is one of two ways to initiate a proceeding before LAFCO (Gov. Code, § 56650) and is included with the application filed with LAFCO (Gov. Code, § 56652, subd. (a)). A resolution of application is thus part of LAFCO's process. (Gov. Code, § 56654.) Even if it is theoretically possible to separate the District's "initial decision" to apply to the Commission from the subsequent application, subjecting the "initial decision" to referendum creates a dueling process that manifestly interferes with the Commission's ability to act. (*Friends of Mount Diablo, supra*, 72 Cal.App.3d at p. 1013 [allowing referendum would "destroy the efficient administration of government"].) Additionally, although plaintiffs claim they are merely challenging the *decision to apply* to the Commission for dissolution, they plainly seek to halt the actual dissolution. Yet the "sole and exclusive" method for challenging a proposed dissolution is through the Reorganization Act. (Gov. Code, § 56100.) Plaintiffs' use of the referendum process would undermine the state's regulation over this field.

Plaintiffs also assert that "all doubts" as to whether the District exercised a legislative act in passing the Resolution must be resolved in favor of the referendum process. However, we have no doubt as to the Legislature's intention. Fire protection districts are purely creatures of statute, from which they derive all of their rights and powers. (*Las Tunas Beach, supra*, 38 Cal.App.4th at p. 1012.) With respect to

11

dissolving a fire protection district, the Legislature was clear—the Reorganization Act "shall govern[.]"  (Health & Saf. Code, § 13812; see *City of Morgan Hill v. Bushey* (2018) 5 Cal.5th 1068, 1079-1080 [referendum is preempted if there is a " 'definite indication' " or " ' "clear showing" ' " that Legislature intended to restrict the right].)  Under the Reorganization Act, a resolution of application is administrative in nature—a prerequisite to obtaining a decision from the Commission, which holds the power to approve or disapprove the proposed dissolution.  (*Friends of Mount Diablo, supra*, 72 Cal.App.3d at p. 1012.)  Accordingly, the District's Resolution is not subject to the referendum process.

## DISPOSITION

The judgment is affirmed.


NARES, J.

WE CONCUR:


BENKE, Acting P. J.


IRION, J.

12