Filed 3/30/21

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| JULIAN VOLUNTEER FIRE COMPANY ASSOCIATION et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> JULIAN-CUYAMACA FIRE PROTECTION DISTRICT, <br><br> Defendant and Appellant; <br><br> COUNTY OF SAN DIEGO et al., <br><br> Interveners and Respondents. | D076639 <br><br><br> (Super. Ct. No. 37-2018-00020015-CU-MC-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Randa Trapp, Judge. Affirmed.

Craig A. Sherman for Plaintiffs and Appellants.

Briggs Law Corporation, Cory J. Briggs and Nora Pasin for Defendant and Appellant.

Colantuono, Highsmith & Whatley, Holly O. Whatley, Carmen A. Brock, and Liliane M. Wyckoff for Intervener and Respondent San Diego Local Agency Formation Commission.

Thomas E. Montgomery, County Counsel, Joshua M. Heinlein, Deputy County Counsel, for Intervener and Respondent County of San Diego.

For many years, plaintiff Julian Volunteer Fire Company Association (Volunteer Association) through a local fire district (Julian-Cuyamaca Fire Protection District (District)) provided fire prevention and emergency services to the Julian and Cuyamaca rural communities. In 2018, the District voted to seek to dissolve and be replaced by the County of San Diego (County) fire authority. This triggered a mandatory review process by a state agency (San Diego Local Agency Formation Commission (LAFCO)), and spawned several lawsuits by those opposing dissolution and the replacement of local volunteers with professional County firefighters.

In this lawsuit, Volunteer Association and related individuals (collectively Volunteer Association) alleged the District violated California's open meeting law (Ralph M. Brown Act (Brown Act)) when its board of directors (Board) first voted to begin the dissolution process. (Gov. Code, § 54950 et seq.)[1] We determine these claims are barred because plaintiffs unreasonably delayed in prosecuting their lawsuit until after a districtwide special election approving the dissolution and this delay substantially prejudiced the parties and the general public.

**OVERVIEW**

On April 10, 2018, the District's Board approved a resolution requesting LAFCO to dissolve the District and have County assume fire prevention services in the area.[2] Two weeks later, Volunteer Association sued the District, alleging the Board's approval of the resolution violated the

---

[1] Unspecified statutory references are to the Government Code.

[2] LAFCO is a state agency existing in each county charged with coordinating, approving, and overseeing changes to local governmental boundaries, including a dissolution. (§§ 56325, 56375, subd. (a)(2)(B).)

2

Brown Act. Volunteer Association sought a writ of mandate ordering the District to vacate the resolution.

While this Brown Act lawsuit was pending in the superior court, County and LAFCO engaged in legally required actions in response to the District's dissolution request. County voted to seek to expand its sphere of influence over the District's functions, and LAFCO complied with its statutory obligation to consider the District's request, which included holding public hearings and triggering a special election of affected residents on the District's dissolution request.

As these County and LAFCO actions were proceeding, the District initially opposed Volunteer Association's lawsuit. But later—after its Board membership changed and a majority now disagreed with the earlier dissolution resolution—the District no longer contested Volunteer Association's claims.

LAFCO then held a special election of District voters, resulting in a majority vote favoring the District's dissolution. Shortly after this election result was announced, Volunteer Association filed an ex parte motion asking the court to immediately enter judgment in its favor on its Brown Act claims, without notifying LAFCO or County of this request. The District's new counsel (representing the new Board majority) told the court it did not oppose this motion. With only these two sets of parties before it (Volunteer Association and the District), the court entered judgment for Volunteer Association and issued a writ ordering the District to revoke its original dissolution resolution.

Three days later, the District relied on this judgment in seeking to preclude LAFCO from certifying the election result favoring dissolution. County and LAFCO then intervened in the Brown Act lawsuit as necessary

3

and/or indispensable parties, and successfully moved to vacate the judgment and the writ. The court stated it was not previously aware of these parties' direct interests in the litigation, and found there were irregularities in the earlier writ proceedings.

County and LAFCO then moved for judgment on the pleadings on Volunteer Association's Brown Act claims, arguing Volunteer Association's complaint was untimely; the claims were barred by the administrative exhaustion and laches doctrines; and any violations of the Brown Act were not prejudicial. Both Volunteer Association and the District opposed the motion, and the District moved to dismiss the complaint, claiming the Board had already voted to rescind its initial dissolution vote in response to the court's prior writ (before the writ was vacated).

After extensive briefing, the court granted the interveners' motion; denied the District's motion; and entered judgment against Volunteer Association. Volunteer Association and the District each appeal. We affirm.

We determine Volunteer Association's claims are barred by the laches doctrine, which precludes recovery when a plaintiff unreasonably delays in prosecuting its claims and prejudice results. Volunteer Association scheduled a hearing on its Brown Act claims early in the LAFCO approval process, but then took that hearing off calendar. It then waited until the special election results were announced to reschedule the hearing, requesting the court to immediately grant judgment in its favor and order the Board to rescind its earlier dissolution vote. It did not give County or LAFCO notice of this request, and was aware the only defendant given notice of this hearing (the District) no longer opposed the relief.

Under these particular circumstances, by waiting until after the voters had approved the District's dissolution to seek a ruling on the merits of its

4

Brown Act claims involving only the Board's initial dissolution resolution, Volunteer Association unreasonably delayed prosecuting its claims and this delay caused substantial prejudice to LAFCO, County, and the general public. Additionally, for the reasons explained below, the court properly denied the District's motion to dismiss.

**STATE LAW GOVERNING LOCAL AGENCY DISSOLUTION**

Before describing the factual record, it is helpful to understand the law governing local agency dissolutions. A local district seeking to dissolve must apply to LAFCO under the Cortese-Knox-Hertzberg Local Government Act of 2000 (Reorganization Act; § 56000 et seq.) The Reorganization Act is the "sole and exclusive authority" for local agency structural changes, and contains a detailed scheme requiring LAFCO to take specific steps in determining whether to approve a proposed dissolution. (§§ 56100, subd. (a), 56325, 56375, subd. (a)(1), (2)(B), 56668; see *Southcott v. Julian-Cuyamaca Fire Protection Dist.* (2019) 32 Cal.App.5th 1020, 1026 (*Southcott*).)

As relevant here, a dissolution request is initiated by a "petition" or "resolution" (§ 56650) adopted "by the legislative body of an affected local agency" (§ 56654, subd. (a)). After LAFCO accepts and finds the resolution complete, LAFCO "shall immediately issue a certificate of filing." (§ 56658, subd. (f).) Once that certificate is issued, the LAFCO "proceedings shall be deemed initiated." (§ 56651.) LAFCO's executive officer then must "set the proposal for hearing [within 90 days] and give published notice . . . ." (§ 56658, subd. (h).) LAFCO must consider numerous specified factors (§ 56668) and adopt a resolution making determinations on the proposal (§ 56881). Within 35 days, LAFCO must schedule a public hearing, known as a "protest hearing," and must consider all oral and written objections to the proposed action. (§§ 57000, 57025, subd. (a).) If the protests exceed a

5

specified threshold, LAFCO is required to request election officials to conduct a special election of the registered voters in the affected area, including publishing arguments for and against the measure in ballot materials. (§§ 57052, subd. (a)(2), 57148.)

If a majority of voters approve the dissolution, LAFCO must certify the vote and approve the dissolution. (§ 57176.) If a majority does not approve, LAFCO must deny the application. (§ 57179.)

## FACTUAL AND PROCEDURAL SUMMARY

As previewed, there were many twists and turns in the pathway leading to the final judgment in this case, and several different public entities were involved in the relevant decisions. Because this procedural context is important to a proper determination of the appellate issues, we set forth these facts and the chronology of events in some detail.

In describing these facts, we rely only on the pleaded allegations and matters properly subject to judicial notice. (See *Pointe San Diego Residential Community, L.P. v. Procopio, Cory, Hargreaves & Savitch, LLP* (2011) 195 Cal.App.4th 265, 269.) The trial court took judicial notice of uncontroverted facts contained in documents reflecting official acts by the District, County, and LAFCO. We determine this ruling was correct and thus include those uncontested facts in our factual summary. (See *Freeman v. San Diego Assn. of Realtors* (1999) 77 Cal.App.4th 171, 178, fn. 3.)

### Background

The District was formed to provide fire protection and life-support level emergency medical services to the unincorporated Julian and Lake Cuyamaca communities. (See Health & Saf. Code, § 13800 et seq.) Volunteer Association is a volunteer fire company comprised of volunteer firefighters

6

who provide fire protection and emergency services to Julian and surrounding areas.

The District's Board holds regular monthly public meetings. During the 2017 meetings, the Board rejected proposals to dissolve the District.

However, at its February 13, 2018 meeting, the Board majority voted to begin negotiations with County to dissolve the District and be replaced by County's fire protection and emergency services.

The next month, on March 9, Volunteer Association's counsel wrote a letter to the District demanding it cure several violations of the Brown Act. On the dissolution issue, the letter identified two claimed violations: (1) on January 30, 2018 "a majority of the board members e-mailed each other to develop a collective concurrence" to take action on dissolution, without including the Board member opposed to dissolution; and (2) the February 13 agenda item pertaining to the "negotiation/application of dissolution" of the District did not provide adequate notice to the public. The letter attached several documents, including the January 30 email exchange, and an Attorney General opinion concluding "[a] majority of the board members of a local public agency may not e-mail each other to develop a collective concurrence as to action to be taken by the board without violating the . . . Brown Act . . . ."

Several days later on March 13, the Board held its regular monthly public meeting. The March 13 minutes reflect that at this meeting a Board majority voted to approve a motion "to accept Terms and Conditions [of a dissolution] with a scheduled evening meeting in three weeks [on April 3]."

On the day of the scheduled evening meeting, April 3, the District's counsel sent a letter in response to Volunteer Association's March 9 letter. In the letter, counsel denied the January 30 emails had violated the Brown Act,

7

but said "out of an abundance of caution, the District intends to consider these items in a noticed, open meeting in order to cure the alleged defects." Counsel also denied the claimed agenda violation, but said that even if there was a violation, the issue would be cured because "the Board is holding yet *another* public meeting in the evening regarding the dissolution so that there can be even more public participation in the discussion of the dissolution."

On that evening (April 3), the Board held a public meeting at which it heard public testimony on the subject of dissolution. The minutes of this meeting were combined with the minutes of the March 13 meeting.

One week later, on April 10, the Board held its regular monthly public meeting. The Agenda included Item No. 13, which specifically identified the dissolution resolution as an agenda topic. The meeting minutes show a majority of the Board members approved the resolution (hereafter Dissolution Resolution). Three Board members voted in favor, one voted in opposition, and one member was absent. The next day, on April 11, the District submitted the Dissolution Resolution to LAFCO.

## Brown Act Lawsuit and LAFCO Proceedings

About two weeks later, on April 23, Volunteer Association filed a superior court complaint against the District and the Board president (Jack Shelver), alleging the Board violated the Brown Act when it adopted the Dissolution Resolution (Brown Act lawsuit).

Volunteer Association and several individuals then filed a referendum petition with the Board, seeking to compel the Board to rescind the Dissolution Resolution and/or to have a referendum vote. The Board took no action on this petition.

Shortly after, on May 15, County adopted a resolution to apply to LAFCO to amend its sphere of influence and powers, and to serve as the District's successor agency.

At about this same time, Volunteer Association filed a separate lawsuit seeking to compel the District to act on the referendum petition. (*Southcott, supra,* 32 Cal.App.5th 1020.) The trial court later dismissed this lawsuit, finding the Dissolution Resolution was not subject to a referendum.[3]

On June 1, 2018, Volunteer Association filed an amended complaint (the operative complaint) in the Brown Act lawsuit. It alleged the District "violated the Brown Act by having meetings in violation of [section] 54952.2."[4] Specifically, Volunteer Association alleged: "Between August 2017 and the present date, the [Board] members have met in person and via email to discuss the merits of actions to be taken. Fire Chief Rick Marinelli has been used as a hub for serial meetings. Said meetings include discussion of [Board President] Shelver's intent and orchestration to have the District approve and commence dissolution efforts at its February 13, 2018 meeting, including establishing and approving final terms and conditions for dissolution that were approved at the District's March 13, 2018 meeting, and furthered by [the Dissolution Resolution] approved at the District's April 10, 2018 meeting."

---

[3]     Volunteer Association and others unsuccessfully appealed this ruling in this court. (*Southcott, supra,* 32 Cal.App.5th 1020.)

[4]     Section 54952.2, subdivision (b)(1) provides: "A majority of the members of a legislative body shall not, outside a meeting authorized by this chapter, use a series of communications of any kind, directly or through intermediaries, to discuss, deliberate, or take action on any item of business that is within the subject matter jurisdiction of the legislative body."

In the first cause of action, Volunteer Association sought injunctive and declaratory relief requiring the District to hold a public hearing and provide the required 21-day advance notice before voting on whether to proceed with the LAFCO application to dissolve. In the second cause of action, Volunteer Association sought a writ of mandate directing the District "to rescind each and every" action taken at the February 13, March 13, April 3, and April 10 meetings pertaining to the District's dissolution.

A November 2, 2018 hearing was scheduled for the court to consider and rule on the merits of these Brown Act claims.

Meanwhile, on July 18, 2018, LAFCO issued a certificate of filing, proclaiming the District's dissolution application complete.

On September 10, 2018, LAFCO held a public hearing and approved the District's application subject to the outcome of a legally required protest hearing. On October 16, LAFCO held the protest hearing.

Back in superior court, Volunteer Association did not file a memorandum of points and authorities for the scheduled November 2 hearing on its mandate petition in the Brown Act lawsuit. But on October 22, the District filed an opposition to Volunteer Association's Brown Act claims. The District argued these claims were without merit on several grounds, including that the lawsuit was not timely filed and Volunteer Association failed to satisfy the statutory requirement that it timely notify the Board of its precise claims before filing the lawsuit.

The next day, Volunteer Association took the scheduled November 2 hearing on its Brown Act claims off calendar.

Soon after, on November 5, the certified results of the LAFCO protest hearing showed an election on the proposed dissolution must be held. That

10

same day, the District elected new Board members, most of whom were opposed to the District's dissolution.

The next month, on December 3, LAFCO adopted a resolution asking County to hold an election of affected voters to decide whether to confirm LAFCO's approval of the District's dissolution and designating County as the successor agency.

In February and March 2019, County held the mail-ballot election. On March 19, the County registrar (Registrar) announced its unofficial results yielded 54.01 percent of voters favoring the dissolution and 45.99 percent against dissolution.

Six days after this announcement, on March 25, Volunteer Association's counsel filed an ex parte application asking the court to immediately enter judgment against the District on its Brown Act claims. In the application, Volunteer Association said time was of the essence because LAFCO was "set to finalize" the District's dissolution application at its upcoming April 8 meeting and this intended approval "comes on the heels of LAFCO's tentative approval on September 10, 2018 for the District's dissolution subject to the protest voting that culminated and failed on March 19, 2019." Volunteer Association's counsel said, "Without immediate attention and effective relief, [Volunteer Association] will have a drastically more restrained, financially wasteful, and complicated array and quagmire of legally backward-looking remedies."

Volunteer Association served only the District's new counsel (Cory Briggs) with this motion and not defendant Shelver (the former Board president) who was represented by separate counsel and apparently would have opposed the motion.

11

The next day, at the ex parte hearing, the District's new counsel appeared and said the District no longer opposed a judgment declaring the Dissolution Resolution null and void. The court decided to consider Volunteer Association's motion on its law and motion calendar, rather than on an ex parte basis, and scheduled an April 5 hearing.

On April 4, the Registrar certified the previously announced election results showing a majority of District voters approved the dissolution. LAFCO scheduled an April 8 meeting to finalize the dissolution.

**First Judgment in the Brown Act Lawsuit**

Three days before the scheduled April 8 LAFCO final vote, on April 5, the trial court heard the Volunteer Association's motion for judgment in the Brown Act lawsuit. The court granted the "unopposed" writ of mandate petition, finding Volunteer Association proved the Brown Act violation allegations.

The court's order stated: "[T]hrough emails and secret meetings in January 2018, three of the five board members agreed to dissolve the District. Thus, by the time the District met on February 13, 2018 to purportedly authorize the commencement and negotiations to dissolve the District, terms had already been discussed and agreed upon between Shelver, [and two other Board members] . . . . Subsequent open meetings accepted certain terms and conditions and culminating in the Board adopting a resolution to dissolve the District. Further, evidence is presented that a timely demand [was made on] the legislative body to cure or correct the actions taken in violation of the enumerated statutes and that the legislative body did not cure or correct the challenged action." The court cited section 54960.1, subdivision (b) and *Page v. MiraCosta Community College Dist.* (2009) 180 Cal.App.4th 471 (*Page*).

12

The court relied on documents attached to Volunteer Association's counsel's declaration (authenticated by the District) and documents for which Volunteer Association sought judicial notice (unopposed by the District). These documents included the March 9 and April 3 letters; various emails between former Board members and Fire Chief Martinelli; and the agenda and minutes of the February, March, and April Board meetings.

Based on its findings, the court issued a peremptory writ of mandate finding the District "violated the Brown Act . . . arising from the secret ballot of the majority of the board members to dissolve the District on or about January 30, 2018."  In the writ, the court ordered the District to "rescind" the actions taken at the February 13, March 13, and April 10 Board meetings pertaining to the dissolution, including the Dissolution Resolution.  In response to Volunteer Association's request, the court also dismissed defendant Shelver without prejudice.

### LAFCO Certification of Special Election Approving Dissolution

Three days later, on April 8, LAFCO certified and finalized the District's reorganization and dissolution.  That same day, the District filed a reverse validation action against County and LAFCO (and others), alleging the dissolution was unlawful based on the same Brown Act violations alleged in the Brown Act lawsuit.  The District relied on the court's recent judgment and writ ordering the District to rescind the Dissolution Resolution.

### Intervention and Order Vacating First Judgment

One week later, on April 15, 2019, County and LAFCO (Interveners) moved to intervene in the Brown Act lawsuit.  Volunteer Association and the District opposed the motion.  After extensive briefing and a hearing, the court granted the motion, stating: "Proposed Intervenors have shown that mandatory intervention is proper. . . .  [U]nbeknownst to this court at the

time, its ruling did affect both LAFCO and the County. . . . [After] LAFCO received the results of the election[,] [LAFCO] learned for the first time that [the District] was using this court's [judgment] to declare the [Dissolution Resolution] to be null and void[;] the Registrar could not conduct the election[;] and the County could not succeed by operation of law to [District's] property and assets. Thus, the County [and] LAFCO's rights were all affected by the [prior] judgment . . . without representation." The court also found Interveners were not aware until April 8, 2019 (when their representatives met to set an effective date for the District's dissolution) that the District had no longer opposed the Brown Act lawsuit and had joined Volunteer Association in seeking to overturn the Dissolution Resolution.

Two months later, the court vacated the prior judgment and ordered a new trial "due to irregularity in the proceedings . . . prevent[ing] the parties from having a fair trial." These irregularities included that Volunteer Association and the District "did not join, and did not inform the court about, indispensable parties [County and LAFCO] that the judgment would affect."[5]

### Motion for Judgment on Pleadings in Brown Act Lawsuit

County and LAFCO then moved for judgment on the pleadings. They argued Volunteer Association's claims are barred as a matter of law because (1) the claims are untimely under the statutory limitations period (§ 54960.1); (2) Volunteer Association failed to exhaust its mandatory administrative remedy (*ibid*); (3) Volunteer Association was not prejudiced by any Brown Act violation; and (4) the claims are barred by the laches doctrine. In support, County and LAFCO relied on the complaint's allegations and asked the court

---

5      Neither Volunteer Association nor the District appeal from the court's orders granting the intervention motion and vacating the prior judgment.

14

to take judicial notice of 14 sets of documents (some with attachments). These documents were mainly official governmental documents prepared by the District, LAFCO, and/or County.

Volunteer Association countered: (1) the lawsuit was timely and it satisfied all prerequisites to comply with the procedural requirements of the Brown Act (§ 54960.1); (2) laches is a question of fact and "there was substantial justification" for the delay based on the "multiple ancillary lawsuits, petitions, appeals, and elections that would have mooted and destroyed the necessity for an immediate hearing, trial, and judgment"; and (3) it suffered prejudice because the District was dissolved without a proper initiation of the dissolution process.

Both Volunteer Association and the District objected to the Interveners' judicial notice request, as discussed in more detail below.

The District also opposed the Interveners' motion for judgment on the pleadings and *additionally* moved to dismiss the lawsuit with a finding the District had already cured the violation by rescinding the prior Dissolution Resolution. In support, the District submitted a declaration of a current Board member, who said that on April 6, 2019, the Board adopted a resolution (in response to the court's April 5, 2019 writ (now vacated) that "rescinded" the Board's dissolution actions taken on February 13, March 13, and April 10, 2018.

After holding a hearing and considering the parties' papers, the court denied the District's motion to dismiss; granted County and LAFCO's judicial notice request; and granted County and LAFCO's motion for judgment on the pleadings.

On County and LAFCO's motion for judgment on the pleadings, the court agreed with these parties that Volunteer Association's complaint was

15

not timely filed. Interpreting section 54960.1, subdivision (c)(2), the court found the deadline for bringing the action was April 18, 2018, and the lawsuit was not filed until five days later, on April 23. The court alternatively found Volunteer Association did not "exhaust[ ] administrative remedies" required under the Brown Act because "the only demand letter concerned the February 13, 2018 actions while the complaint also sought to rescind actions taken at [the] later [March and April 2018] hearings." (See § 54960.1, subd. (b).) Based on these conclusions, the court did not reach the laches or prejudice arguments.

On the District's motion to dismiss, the court denied the motion on several grounds, including the District no longer had the authority to rescind its initial approval given LAFCO's subsequent actions.

Volunteer Association and the District appeal.[6]

## DISCUSSION

### I. Review Standard

A motion for judgment on the pleadings " 'performs the same function as a general demurrer, and [thus] attacks only defects disclosed on the face of the pleadings or by matters that can be judicially noticed. [Citations.]' " (*Burnett v. Chimney Sweep* (2004) 123 Cal.App.4th 1057, 1064 (*Burnett*).)

---

[6] County and LAFCO argue the District has no standing to appeal because it was not aggrieved from the court's ruling as it sought a dismissal of the action, and this is what the court did. However, the District did oppose the judgment-on-the-pleadings motion and also sought a dismissal *with* an order that its recent April 6, 2019 vote rescinding the Dissolution Resolution was valid. Thus, viewing the District's appeal rights liberally, we find the District has standing to appeal. However, as explained below, its asserted appellate contentions are wholly without merit.

16

The court must determine whether the complaint states a cause of action assuming the truth of the alleged facts. (*Ibid.*)

We review the court's ruling de novo. (*Burnett, supra,* 123 Cal.App.4th at pp. 1064-1065.) We do not review the validity of the trial court's reasoning, and must uphold the court's ruling if it was correct on any legal theory raised by the parties " 'even if the trial court did not rely on those grounds.' " (*Colombo v. Kinkle, Rodiger & Spriggs* (2019) 35 Cal.App.5th 407, 416.)

## II. Judicial Notice

In their motion for judgment on the pleadings, County and LAFCO relied on numerous documents for which they successfully sought judicial notice. In its appellate briefs, Volunteer Association does not challenge the court's judicial notice ruling (presumably because Volunteer Association relied on many of these same documents in seeking the initial judgment). The District challenges the court's judicial notice ruling, but does not identify any particular document to which it is objecting, or any facts or propositions of which the trial court took improper notice. Absent such information, the District has forfeited its appellate challenge. (See *Overhill Farms, Inc. v. Lopez* (2010) 190 Cal.App.4th 1248, 1271.)

The District's contention also fails on its merits. The court granted County and LAFCO's request to take judicial notice of three categories of documents:

(1) documents for which Volunteer Association had sought judicial notice and/or had attached to its counsel's declaration *that had been authenticated by the District* and had been filed in support of Volunteer Association's motion for judgment (e.g., Volunteer Association's March 9 and

the District's April 3 letters; and the agendas and minutes of the February 13, March 13, and April 10 Board meetings);

(2) official reports and acts of the District, County, and/or LAFCO (e.g. the Dissolution Resolution; County's resolution seeking to expand its sphere of influence and serve as the District's successor; the recorded Certificate of Completion; and LAFCO's Certificate of Filing); and

(3) the Superior Court's Register of Actions for this case.

The court properly took judicial notice of each of these documents. A court may take judicial notice of documents in its own records and those reflecting the official acts of local and state agencies, including resolutions, minutes, and agendas. (Evid. Code, § 452, subds. (c), (d), (h); see *Associated Builders & Contractors, Inc. v. San Francisco Airports Commission* (1999) 21 Cal.4th 352, 375, fn. 4; *Trinity Park L.P. v. City of Sunnyvale* (2011) 193 Cal.App.4th 1014, 1027 [court may judicially notice a city's resolutions, reports, and other official acts], disapproved on other grounds in *Sterling Park, L.P. v. City of Palo Alto* (2013) 57 Cal.4th 1193, 1210; *Social Services Union v. City and County of San Francisco* (1991) 234 Cal.App.3d 1093, 1098, fn. 3 [minutes of city commission meeting "are clearly a matter of which we can take judicial notice"].)

The District does not challenge these general rules or argue the court could not properly take judicial notice of these documents' existence. Instead, it argues the court could not rely on facts in the documents for the truth of the matters asserted.

We agree a court generally may not take judicial notice of the truth of facts asserted within documents. (See *Herrera v. Deutsche Bank National Trust Co.* (2011) 196 Cal.App.4th 1366, 1375.) But this rule is inapplicable

18

here because the judicially noticed documents were not admitted or relied upon for the truth of particular facts contained in the documents.

At most, the trial court took judicial notice of the dates and nature of the official acts.  This is permissible.  In taking judicial notice of an official document, a court may take notice not only of the fact of the document but also facts that can be deduced, and/or clearly derived from, its legal effect, such as the names and dates contained in the document, and the legal consequences of the document.  (*Scott v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 743, 754-755; *Poseidon Development, Inc. v. Woodland Lane Estates, LLC* (2007) 152 Cal.App.4th 1106, 1117-1118; see *Arnold v. Universal Oil Land Co.* (1941) 45 Cal.App.2d 522, 528-530 (*Arnold*); see also *White v. Davis* (2003) 30 Cal.4th 528, 553, fn. 11.)  This is different from taking judicial notice of the truth of specific factual representations within a document.  (*Poseidon,* at pp. 1117-1118; see *Mangini v. R.J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1063-1065 [court could not take judicial notice of truth of conclusions in a Surgeon General report about the health effects of smoking or of matters reported in a newspaper article], overruled on other grounds in *In re Tobacco Cases II* (2007) 41 Cal.4th 1257, 1276.)

Under these principles, the court did not err in taking judicial notice of the documents prepared by LAFCO, County, and the District, including the dates and the legal effect of the statements contained in the documents.  Neither the trial court, nor this court, has taken judicial notice of the truth of any specific disputed facts contained in these documents.

### III.  Brown Act

The purpose of the Brown Act is to "facilitate public participation in local government decisions and to curb misuse of democratic process by secret legislation." (*Bell v. Vista Unified School Dist.* (2000) 82 Cal.App.4th 672,

681; see *Page, supra,* 180 Cal.App.4th at p. 501.) To achieve this goal, the Brown Act imposes an "open meeting" requirement on local legislative bodies, such as the District. (§§ 54953, subd. (a), 54951, 54952, subd. (a).)

Section 54960.1 permits interested persons to file lawsuits seeking to invalidate a local entity decision reached in violation of the Brown Act. To prevail, the plaintiff must show: (1) the local legislative body violated one or more Brown Act provisions; (2) the legislative body took action in connection with the violation; (3) a timely demand for the legislative body to cure or correct the improper action; (4) the legislative body did not cure or correct the action; and (5) prejudice from the Brown Act violation. (See *Page, supra,* 180 Cal.App.4th at p. 500; *Fowler v. City of Lafayette* (2020) 46 Cal.App.5th 360, 371-372; *Boyle v. City of Redondo Beach* (1999) 70 Cal.App.4th 1109, 1116-1117.) A very short limitations period (generally 15 days from specified dates) applies to such action. (See § 54960.1, subd. (c)(4).)

To avoid liability, the public entity may cure the challenged action, but a "cure" generally requires that the action be thoroughly reconsidered at a properly noticed public meeting, not merely ratified at a public meeting. (*Page, supra,* 180 Cal.App.4th at p. 505; Asimow et al*.,* Cal. Practice Guide: Administrative Law (The Rutter Group 2020) ¶ 28:495.) The Brown Act's provisions must be " ' "construed liberally in favor of openness in conducting public business." ' " (*Page*, at p. 501.)

In this case, the trial court found Volunteer Association could not recover on its Brown Act claims because Volunteer Association did not file the action within the applicable limitations period or properly request the Board to cure its violations before filing the action. Volunteer Association challenges these findings on appeal.

20

We do not reach these issues because even assuming Volunteer Association timely filed the action and exhausted its administrative remedies, its claims fail for a more fundamental reason: the claims are barred by the laches doctrine. Under the complaint's allegations and judicially noticed materials, Volunteer Association's lengthy delay in scheduling and conducting a hearing on its Brown Act claims was unreasonable and resulted in significant prejudice to LAFCO, County, and the public.

## IV. Laches

## A. General Principles

Laches is an affirmative defense that applies to an equitable action seeking a writ of mandamus, such as Volunteer Association's action. (See *Decea v. County of Ventura* (2021) 59 Cal.App.5th 1097, 1103-1104; *El Dorado Palm Springs, Ltd v. Rent Review Comm.* (1991) 230 Cal.App.3d 335, 346-347.) To prevail, the defendant must show (1) unreasonable delay; and (2) " ' "either acquiescence in the act about which plaintiff complains or prejudice to the defendant resulting from the delay." [Citation.]' " (*Highland Springs Conference & Training Center v. City of Banning* (2016) 244 Cal.App.4th 267, 282.) The defendant has the burden to prove both elements of the laches defense. (*Miller v. Eisenhower Medical Center* (1980) 27 Cal.3d 614, 624.)

Although laches is generally a factual question, "[o]n undisputed facts, the applicability of laches may be decided as a matter of law." (*Committee to Save the Beverly Highlands Home Assn. v. Beverly Highlands Homes Assn.* (2001) 92 Cal.App.4th 1247, 1266; see *Isakoolian v. Issacoulian* (1966) 246 Cal.App.2d 225, 229 [laches "may be raised and determined by a general

21

demurrer"]; *Arnold, supra,* 45 Cal.App.2d at pp. 530-534 [upholding demurrer under laches doctrine based on judicially noticed materials].)

## B. Unreasonable Delay

Even if the plaintiff timely files the complaint, laches can bar relief if a plaintiff unreasonably delays in bringing the litigation to completion. (See *Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 68 (*Johnson*); *Heavenly Valley v. El Dorado County Bd. of Equalization* (2000) 84 Cal.App.4th 1323, 1347-1348; *Vernon Fire Fighters Assn. v. City of Vernon* (1986) 178 Cal.App.3d 710, 720 (*Vernon*).)

In this case, Volunteer Association filed its Brown Act lawsuit on April 23, 2018, but did not seek a ruling on the merits for about one year in late March 2019. The delay was unreasonable under the circumstances.

Volunteer Association concedes that once the District submitted the Dissolution Resolution to LAFCO on April 11, LAFCO was legally mandated to follow detailed statutory procedures for determining whether to approve the Dissolution Resolution, and to provide for public participation in this process.

To this end, on July 18, LAFCO issued a certificate of filing proclaiming the District's application complete. LAFCO was then required to take action on the application within 90 days. (§§ 56658, subd. (h), 56106.) LAFCO held a September 10 hearing on the District's dissolution application and adopted a resolution approving the reorganization. On October 16, LAFCO conducted a public protest hearing at which members of the public had the opportunity to, and did, submit numerous written and oral objections to the dissolution.

At that point, the trial court was scheduled to consider Volunteer Association's Brown Act claims on their merits at a November 2, 2018 hearing. Less than two weeks before that hearing, the District filed its

22

memorandum of points and authorities arguing that Volunteer Association's claims had no merit. But Volunteer Association filed no papers supporting its petition. Instead, it took the matter off calendar without a stated reason.

Shortly after, the results of the protest hearing were certified showing a special election was required to be held. The next month, on December 3, LAFCO adopted a resolution requesting County to conduct the special election. County then scheduled a mail-ballot election, which was conducted in February through March 19, 2018. On March 19, 2019, the Registrar's unofficial results showed a majority of District voters favored dissolution.

The next day Volunteer Association decided it was now ready to schedule a hearing on its claims and served the District with discovery requests asking the District to admit to the authenticity of its exhibits. The District responded two days later by serving verified responses authenticating the exhibits. Three days later, on March 25, Volunteer Association raced to the courthouse and filed its ex parte request for judgment on its Brown Act claims, without notifying County, LAFCO, or defendant Shelver. The District (which now agreed with Volunteer Association's objectives) did not oppose this request. When the court declined to resolve the claims on its ex parte calendar, Volunteer Association scheduled a hearing less than two weeks later, a few days before the election results would be certified (again without notifying County or LAFCO or Shelver).

On this record, Volunteer Association acted unreasonably in waiting to obtain a ruling on its Brown Act claims until after learning the results of the special election. The Brown Act claims involved the propriety only of the initial action that triggered LAFCO's mandatory administrative process: the vote to initiate the District's dissolution. According to Volunteer Association,

23

if this step is invalid, the entire LAFCO process becomes invalid. (See *Hernandez v. Town of Apple Valley* (2017) 7 Cal.App.5th 194, 206-208 [voter-approved initiative declared null and void because entity violated Brown Act in vote placing measure on ballot].) Assuming this is true (and we do not reach this issue), it was untenable for Volunteer Association to wait until the entire LAFCO process was completed to assert its claims. By March 25 when it finally sought a ruling on its Brown Act claims, these claims—which sought to enforce the public's right to participate in the dissolution decision—had essentially become moot by the fact that a public election of all affected residents was held on the same issue.

There is nothing in the record showing any justification for the delay, such as the need to conduct discovery, obtain additional evidence, or any other circumstances showing the claims could not have been resolved on November 2, 2018 when the hearing was initially scheduled. Moreover, by obtaining a hearing within days of its request, it is clear Volunteer Association could have obtained a ruling on the merits of its claims much earlier had it sought to do so.

In the proceedings below and in its appellate brief, Volunteer Association argues the delay was reasonable because there existed "other" circumstances that would have "mooted and destroyed the necessity for an immediate hearing, trial and judgment" on its Brown Act claims, such as the March 19 special election or the *Southcott* litigation seeking to trigger a referendum election on the Dissolution Resolution.

This argument underscores the unreasonableness of Volunteer Association's actions. Volunteer Association seeks to excuse its delay by suggesting it made a deliberate decision to wait and see whether the same result could be achieved through means other than pursuing its Brown Act

24

allegations. Although this decision may be understandable with respect to Volunteer Association's overall strategy, it was an unreasonable tactical decision if it wanted to preserve its Brown Act claims. An action to rescind a public agency's resolution for violating the Brown Act is subject to an unusually short limitations period because it is vital that the validity of an agency's actions be resolved expeditiously. (§ 54960.1, subd. (c)(4).) Given this policy and the policy underlying the Reorganization Act to ensure orderly and efficient transfers of authority among public entities (§ 56301), a party cannot justify waiting to resolve Brown Act allegations pertaining to an initial local agency decision merely because other potential avenues exist for achieving similar results.

Volunteer Association argues it did take reasonable steps to prosecute its Brown Act claims by bringing the *Southcott* action in an attempt to stop the LAFCO proceedings. (*Southcott, supra,* 32 Cal.App.5th 1020.) However, that lawsuit concerned only the referendum petition. Volunteer Association's actions unrelated to its Brown Act claims do not excuse the lengthy delay in prosecuting *those* statutory claims.

We also find unhelpful Volunteer Association's discussion of the fact that LAFCO and County were aware of its lawsuit and yet did not intervene until after the court entered the first judgment in favor of Volunteer Association. The timing of the intervention does not excuse Volunteer Association's delay. It was the responsibility of the plaintiff (Volunteer Association) and not third parties who were not named or served in the lawsuit to ensure the plaintiff's claims were timely resolved.

Volunteer Association argues that several of the laches decisions cited by County and LAFCO involve personnel decisions and thus are inapplicable. (See, e.g., *Johnson, supra,* 24 Cal.4th 61; *Vernon, supra,* 178 Cal.App.3d 710.)

25

Although those decisions involve different factual contexts and thus trigger different timing and prejudice concerns, the general principles discussed in those cases involving the application of the laches doctrine apply equally in this case.

Volunteer Association also argues the delay was not excessive when compared to delays in other cases. (See, e.g., *Johnson, supra,* 24 Cal.4th at p. 68.) We agree that in many cases the delay found to be unreasonable was for a longer period. But the issue before us concerns the delay in asserting Brown Act claims challenging a local agency's initiation of a dissolution that is the first step in the Reorganization Act process. In this specific situation, it was unreasonable to wait for the LAFCO process to be nearly completed before obtaining a ruling on such challenges.

### C. Prejudice

To prevail on a laches defense, the defendant must also show " 'prejudice [was] caused by the delay . . . .' " (*San Bernardino Valley Audubon Society v. City of Moreno Valley* (1996) 44 Cal.App.4th 593, 605.) The " 'prejudice . . . may be of either a factual nature or some prejudice in the presentation of a defense.' " (*Ibid*.) " ' " 'A defendant has been prejudiced by a delay when the assertion of a claim available some time ago would be "inequitable" in light of the delay in bringing that claim . . . [and the] defendant has changed his position in a way that would not have occurred if the plaintiff had not delayed.' " ' " (*George v. Shams-Shirazi* (2020) 45 Cal.App.5th 134, 142.) A defendant can establish prejudice by showing detrimental reliance on the status quo. (*Brown v. State Personnel Board* (1985) 166 Cal.App.3d 1151, 1162.)

LAFCO and County met their burden on this element. The prejudice is obvious from the record. Even assuming there was a Brown Act violation, the

reversal of the District's Dissolution Resolution at this late date would result in the imposition of substantial unnecessary costs and burdens on all parties, and particularly the public. By waiting until after the protest hearing and after the special election to ask the court to resolve its Brown Act claims, Volunteer Association caused County and LAFCO to incur substantial costs to comply with statutorily required procedures.

During the LAFCO process, officials and the public had the full opportunity to consider and express their opinions on the subject of the District's dissolution. To require the court to resolve the merits of the Brown Act claims after the LAFCO public hearings and after the special election—as if these later steps did not occur—would be inequitable to the District voters, LAFCO, and County under the circumstances.

As this court observed more than 60 years ago, "The rule of laches is founded in sound policy and its application prevents inequity and injustice. In the instant case, the delay was long, unnecessary and unexcused, and the respondents have been prejudiced by the delay and inactivity of the petitioner." (*Callender v. County of San Diego* (1958) 161 Cal.App.2d 481, 484.)

## V. Motion to Dismiss

The District contends the court erred in denying its motion to dismiss Volunteer Association's lawsuit based on its newly proffered evidence that on April 6, 2019 the new Board adopted a resolution rescinding the April 2018 Dissolution Resolution. The District presented evidence that the Board took this action in response to the court's original writ before it was vacated.

This appellate argument is without merit.

First, if the District is arguing the court erred in refusing to dismiss Volunteer Association's action, it is not an aggrieved party because it

27

achieved this result.  That is precisely what the court did by granting the motion for judgment on the pleadings.

Second, if the District is arguing the court erred in failing to recognize and uphold the validity of the April 6, 2019 Board resolution rescinding the April 10, 2018 Dissolution Resolution, the District has no legal standing to make this argument.  The District was a defendant in the action and thus was not entitled to seek or obtain affirmative relief.  (See *Millgee Inv. Co. v. Friedrich* (1967) 254 Cal.App.2d 802, 806-807.)  Additionally, we agree with Interveners that because the court's writ order was subsequently vacated, the District's action did not retain validity merely because it was originally enacted in response to the original writ.

Moreover, the actions of the District and its counsel were not in good faith and this court does not condone their underhanded tactics.  At the time the Board purportedly voted to rescind the Dissolution Resolution in response to the court's writ, it was on notice of the public vote in the special election supporting the dissolution and it was aware that LAFCO was legally required to certify that vote.  By then seeking to secretly make an end run around such legally mandated procedures *without notice to the public entities directly affected* (County and LAFCO), the District and its counsel were not acting in good faith.  This is particularly true since there was no evidence showing the April 6, 2019 vote was taken during a public meeting that had been properly noticed.

## DISPOSITION

Judgment affirmed.  Volunteer Association and the District are jointly responsible for paying the appellate costs borne by County and LAFCO.


                                                                    HALLER, J.

WE CONCUR:


HUFFMAN, Acting P. J.


O'ROURKE, J.