Filed 3/28/24  AIDS Healthcare Foundation v. Bonta CA2/2

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| AIDS HEALTHCARE FOUNDATION et al., | B321875 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. 21STCP03149) |
| v. | |
| ROB BONTA, as Attorney General, etc., et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, James C. Chalfant, Judge.  Affirmed.

Michael W. Webb, City Attorney; Strumwasser & Woocher, Beverly Grossman Palmer and Julia Michel for Plaintiffs and Appellants.

Law Offices of Stuart M. Flashman and Stuart M. Flashman for Livable California and Thousand Friends of Martinez as Amici Curiae on behalf of Plaintiffs and Appellants.

Rob Bonta, Attorney General, Thomas S. Patterson, Assistant Attorney General, Benjamin M. Glickman and Seth E. Goldstein, Deputy Attorneys General, for Defendants and Respondents.

\* \* \* \* \* \*

In response to a "severe shortage of housing at all income levels in this state," our Legislature enacted Senate Bill No. 10 (2021-2022 Reg. Sess.) (Senate Bill 10), which grants counties and cities some discretion, on a parcel-by-parcel basis, to supersede local housing density caps, even if those caps had been adopted by voter initiative. (Gov. Code, § 65913.5; Stats. 2021, ch. 163, § 1.)[1] Does this legislation violate the initiative power enshrined in article II, section 11 of the California Constitution? We conclude that it does not. We so conclude because the housing shortage is a matter of statewide concern, because Senate Bill 10 conflicts with (and hence preempts) local initiatives that make housing density caps mandatory, and because Senate Bill 10's more narrowly tailored mechanism of cloaking counties and cities in the mantle of state preemptive authority so that *they* may decide whether to supersede a local density cap on a parcel-by-parcel basis—rather than effecting a wholesale invalidation of all local density caps in every county and city—is not constitutionally problematic. We accordingly

---

[1] All further statutory references are to the Government Code unless otherwise indicated.

reject the facial challenge to the constitutionality of Senate Bill 10, and affirm the trial court's order denying the petition for a writ of mandate.

## FACTS AND PROCEDURAL BACKGROUND

### I.     Senate Bill 10, On Its Face

By its plain text, Senate Bill 10 authorizes local legislative bodies, including those of "charter cities," to "adopt an ordinance to zone a parcel for up to 10 units of residential density per parcel" as long as (1) "the parcel is located in" either (a) "[a] transit-rich area," or (b) "[a]n urban infill site"; (2) the parcel is *not* located in "a very high fire hazard severity zone"; and (3) the local legislative body "find[s] that the increased density . . . is consistent with [its] obligation to affirmatively further fair housing." (§ 65913.5, subds. (f), (a)(1), (a)(4)(A) & (b)(3); see *id.*, subds. (e)(2) & (e)(3) [defining "[t]ransit-rich area" and "[u]rban infill site"].) What is more, Senate Bill 10 empowers legislative bodies to enact such parcel-specific zoning ordinances "[n]otwithstanding any local restrictions" on housing density limits, whether those limits were enacted by ordinance or adopted by local voter initiative, except that Senate Bill 10 does not empower them to supersede "initiative[s] that designate[] publicly owned land as open-space land . . . or for park or recreational purposes." (*Id.*, subds. (a)(1) & (a)(4)(B).) In other words, Senate Bill 10 grants local legislative bodies discretion whether to supersede local caps on housing density: It takes a simple majority to supersede a housing density cap enacted by a local *ordinance*, but a supermajority, two-thirds vote to supersede a cap adopted by a local *voter initiative*. (*Id.*, subd. (b)(4).)

3

Section 65913.5 is a temporary measure; it sunsets on December 31, 2028. (*Id.*, subd. (a)(2).)[2]

## II. This Lawsuit

Six days after the Governor signed Senate Bill 10 into law, AIDS Healthcare Foundation—a nonprofit organization which "has been engaged in" the initiative process in California for decades and "expended financial resources" lobbying to remove the initiative-override provisions of Senate Bill 10—filed a petition for writ of mandate against the State of California and its Attorney General (collectively, the State). The City of Redondo Beach, whose voters had previously adopted an initiative curtailing their city council's power to enact parcel-specific ordinances allowing for higher housing density without voter approval, joined as an additional petitioner in the operative first amended petition. That petition seeks an injunction commanding the State to cease enforcement of Senate Bill 10 as well as a declaration that its provisions granting local legislative bodies the discretion to supersede housing density caps in local initiatives "eviscerate[] the fundamental protection against subsequent legislative amendment of initiatives without a vote of the people."

Following briefing on the petition and a hearing, the trial court issued a 20-page decision denying the writ of mandate petition and upholding Senate Bill 10 as a constitutionally valid

---

**2** Though not pertinent to the challenge before us, Senate Bill 10 generally allows—with some exceptions—the local legislative body to bypass the California Environmental Quality Act (CEQA) (Pub. Resources Code, § 21000 et seq.) by declaring that an ordinance zoning for high-density housing under its auspices does "not constitute a 'project' for purposes" of CEQA. (Gov. Code, § 65913.5, subd. (a)(3); but see *id.*, subd. (c).)

4

exercise of the Legislature's power. After concluding petitioners' facial challenge to Senate Bill 10 was ripe, the court ruled that section 65913.5 did not unconstitutionally invade the initiative power because (1) the Legislature possesses the power to invalidate existing local voter initiatives and to preclude the enactment of new voter initiatives, and (2) Senate Bill 10 merely takes the smaller step of allowing local legislative bodies to "override such initiatives upon a two-thirds vote."

## III.   The Appeal

Following the entry of judgment for the State, petitioners timely appealed.

## DISCUSSION

On appeal, petitioners chiefly argue that Senate Bill 10, on its face, constitutes an unconstitutional affront to the power of local voters to enact local laws by initiative because section 65913.5 grants local legislative bodies limited discretion, on a parcel-by-parcel basis, to supersede local housing density caps— even those adopted by local voter initiative. Because a facial challenge to a statute's constitutionality focuses on the statute's text rather than its application in a particular case, "a facial challenge is generally ripe the moment the challenged [law] is passed." (*Bronco Wine Co. v. Jolly* (2005) 129 Cal.App.4th 988, 1034; *Keystone Bituminous Coal Assn. v. DeBenedictis* (1987) 480 U.S. 470, 493-494; *Today's Fresh Start, Inc. v. Los Angeles County Office of Education* (2013) 57 Cal.4th 197, 218; *Del Oro Hills v. City of Oceanside* (1995) 31 Cal.App.4th 1060, 1076.) We therefore reject the State's threshold argument that petitioners' challenge is unripe.

A statute is unconstitutional on its face if it violates the pertinent constitutional provisions *either* "inevitably" *or* "'in the .

5

. . *great majority* of cases'" (*Pacific Legal Foundation v. Brown* (1981) 29 Cal.3d 168, 180-181; *Guardianship of Ann S.* (2009) 45 Cal.4th 1110, 1126); our Supreme Court has yet to "settle on a precise formulation" of the test for facial invalidity (*T-Mobile West LLC v. City & County of San Francisco* (2019) 6 Cal.5th 1107, 1117, fn. 6).  Under either formulation, however, it is not enough to show that the statute "might operate unconstitutionally under some conceivable set of circumstances." (*United States v. Salerno* (1987) 481 U.S. 739, 745 (*Salerno*); *Rental Housing Owners Assn. of Southern Alameda County, Inc. v. City of Hayward* (2011) 200 Cal.App.4th 81, 90.)  We presume that statutes are constitutional, and a party attacking the constitutional validity of a statute bears the burden of overcoming that presumption by ""'clearly, positively, and unmistakably'"" demonstrating the invalidity of the statute. (*Voters for Responsible Retirement v. Board of Supervisors* (1994) 8 Cal.4th 765, 780 (*Voters for Responsible Retirement*).)  We independently review whether a statute is unconstitutional (*Vergara v. State of California* (2016) 246 Cal.App.4th 619, 642), and hence review the trial court's ruling rather than its reasoning (*Rutgard v. City of Los Angeles* (2020) 52 Cal.App.5th 815, 825).

Because the parties' briefing focuses on specific sub-issues and often conflates what we view as distinct questions, we approach the issue of Senate Bill 10's constitutionality through a step-by-step, cascading analysis that, in our view, fully addresses the parties' arguments while also presenting a framework for addressing the constitutional challenges presented in this case. Specifically, we ask:

6

(1)     When can our Legislature displace local laws affecting zoning and land use, including the local laws of charter cities?

(2)     Has Senate Bill 10 displaced local laws setting housing density caps, which requires us to ask:

(a)     Has Senate Bill 10 displaced those caps under the law governing preemption of local laws by state law?

(b)     Has Senate Bill 10 satisfied the more exacting standard for preemption of local voter initiatives?

(3)     Can our Legislature validly exercise its preemptive power by imbuing local legislative bodies with the discretion to decide whether to exercise that power on a parcel-by-parcel basis?

(4)     Do earlier enacted voter initiatives constitute a preemptive exercise of the local legislative body's discretion under Senate Bill 10, such that the body lacks the power to supersede such initiatives?

## I.     When Can Our Legislature Displace Local Laws Affecting Zoning and Land Use, Including the Local Laws of Charter Cities?

The State of California is divided into 58 counties (Cal. Const., art. XI, § 1); within those counties are currently 482 cities (*id.*, art. XI, § 2).  Our state's Constitution grants state laws enacted by our Legislature supremacy over nearly all ordinances adopted by the more local government entities such as counties and cities.  (Cal. Const., art XI, § 7 ["A county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations *not in conflict with general laws*" (italics added)].)

7

But there is a wrinkle: Our Constitution grants counties and cities the right to operate as *"charter* counties" or *"charter* cities," if they so choose. (Cal. Const., art. XI, § 3(a).) Status as a charter county or charter city grants those local entities the power of "home rule," and hence greater autonomy to enact laws vis-à-vis the state. (Cal. Const., art. XI, §§ 3(a), 4(g) [charter counties], 5(a) [charter cities]; *Baggett v. Gates* (1982) 32 Cal.3d 128, 135-136 (*Baggett*).) Thus, our Legislature's power to supersede local laws depends on whether the local law was adopted by a *charter* county or city. A state law supersedes ordinances adopted by a non-charter county or city upon a showing that the two "conflict" (Cal. Const., art. XI, § 7; *Sherwin-Williams Co. v. City of Los Angeles* (1993) 4 Cal.4th 893, 897 (*Sherwin-Williams*)), but a state law supersedes an ordinance enacted by a charter *city*[3] as to "municipal affairs" only if the two conflict *and* (1) "the subject matter of the [state] law is of statewide" or "regional" "concern" (*Professional Fire Fighters, Inc. v. Los Angeles* (1963) 60 Cal.2d 276, 292; *Committee of Seven Thousand v. Superior Court* (1988) 45 Cal.3d 491, 500, 505, 510

---

**3** We focus on the rules governing charter *cities* because land use decisions are typically addressed by cities and because Senate Bill 10 purports to supersede only the laws of charter cities, but not charter counties.

A state law does not supersede an ordinance enacted by a charter *county* because a charter county's ordinances are deemed to be "the law of the [s]tate and [to] have the force and effect of legislative enactments." (Cal. Const., art. XI, § 3(a); *Holmgren v. County of Los Angeles* (2008) 159 Cal.App.4th 593, 601.) As to matters of employee compensation, a charter county's law *supersedes* state law. (Cal. Const., art. XI, § 4(g); *Association for Los Angeles Deputy Sheriffs v. County of Los Angeles* (2021) 60 Cal.App.5th 327, 338.)

(*Committee of Seven Thousand*); *DeVita v. County of Napa* (1995) 9 Cal.4th 763, 783-784 (*DeVita*); *City of Santa Clara v. Von Raesfeld* (1970) 3 Cal.3d 239, 245-246 (*Von Raesfeld*)); and (2) the state law "is reasonably related to [the] resolution" of that concern (*California Federal Savings & Loan Assn. v. City of Los Angeles* (1991) 54 Cal.3d 1, 17; *City of Los Angeles v. California* (1982) 138 Cal.App.3d 526, 533 (*City of Los Angeles*) [state law may "impinge upon local control only to the limited degree necessary to further legitimate state interests"]).[4]

Whether the subject of a state law is a matter of statewide or regional concern is ultimately a question for the courts. (*Bishop v. San Jose* (1969) 1 Cal.3d 56, 63, overruled on another ground in *Mendoza v. Fonseca McElroy Grinding Co., Inc.* (2021) 11 Cal.5th 1118.) In addressing this question, a state law is more likely to be one of statewide or regional concern if (1) the law's subject has been traditionally regulated at the state rather than local level, bearing in mind that what constitutes a statewide concern can evolve over time "in response to changing conditions in society" (*Committee of Seven Thousand, supra,* 45 Cal.3d at p. 505; *Pacific Tel. & Tel. Co. v. City & County of San Francisco* (1959) 51 Cal.2d 766, 771; *Von Raesfeld, supra,* 3 Cal.3d at p. 246); (2) the law is one of "broad general application" rather than "narrow and particularized" (*State Building & Construction Trades Council of California v. City of Vista* (2012) 54 Cal.4th

---

4    There is an exception to this rule:  Ordinances adopted by a charter city addressing a variety of topics involving the organization of the city's officers, elections, police force, and issues of compensation are even more insulated from state oversight.  (Cal. Const., art. XI, § 5(b).)  Because Senate Bill 10 does not implicate any of these topics, this exception is irrelevant.

547, 564); or (3) our Legislature has declared the law to entail issues of statewide concern, as such a declaration—while not dispositive—is entitled to "great weight" (*Vista*, at p. 565; *Bishop*, at p. 63). Close questions are to be resolved in favor of the validity of the state law. (*Baggett*, *supra*, 32 Cal.3d at p. 140.)

Our Legislature in enacting Senate Bill 10 affirmatively declared that the "provision of adequate housing, in light of the severe shortage of housing at all income levels in this state, is a matter of statewide concern." (§ 65913.5, subd. (f).) Petitioners did not attack this declaration before the trial court, but they— and amici curiae Livable California and Thousand Friends of Martinez (amici curiae)—do so for the first time on appeal. (*Newton v. Clemons* (2003) 110 Cal.App.4th 1, 11 ["'issues raised for the first time on appeal which were not litigated in the trial court are waived'"].) Because the issue is squarely presented, we will overlook the waiver.

We hold that the shortage of housing in California addressed by Senate Bill 10 is a matter of statewide concern, and that the statute's grant of discretion to local legislative bodies to supersede locally enacted housing density caps is reasonably related to addressing that concern.

We reach this conclusion for several reasons.

First, although the subjects of land use and zoning have "'historically'" and "traditionally" "'been a function of local government under the grant of police power'" to those governments by our Constitution (*DeVita*, *supra*, 9 Cal.4th at p. 782; *City of Los Angeles*, *supra*, 138 Cal.App.3d at p. 533; *City of Morgan Hill v. Bushey* (2018) 5 Cal.5th 1068, 1079 (*City of Morgan Hill*)), the sub-issue of ensuring affordable housing has been a matter of statewide concern for nearly six decades. Senate

10

Bill 10 was not our Legislature's first foray into this sub-issue; to the contrary, Senate Bill 10 is the latest in a long line of state laws mandating that local governments address the availability and affordability of housing. In 1965, our Legislature enacted section 65300, which obligates local governments to "adopt a comprehensive, long-term general plan" with a "housing element designed to promote adequate housing." (§ 65300 et seq.; Stats. 1965, ch. 1880, § 5; *California Renters Legal Advocacy & Education Fund v. City of San Mateo* (2021) 68 Cal.App.5th 820, 834 (*California Renters*).) When that proved insufficient, our Legislature in 1980 enacted the "Housing Element Law," which obligates local governments to "'analyze and quantify the . . . locality's share of the regional housing need'" and then to submit for approval, to the state's Department of Housing and Community Development, a multiyear schedule of actions that the local governments will undertake to meet those needs; the Legislature also that year enacted the "Least Cost Zoning Law," which obligates local governments to "zone sufficient vacant land for residential use . . . to meet housing needs for all income categories." (§§ 65580 et seq., 65913.1; *California Renters*, at p. 834; *Fonseca v. City of Gilroy* (2007) 148 Cal.App.4th 1174, 1182-1186 [describing both laws].) When those proved insufficient, our Legislature in 1982 enacted the Housing Accountability Act (§ 65589.5), which obligates local governments to approve plans for housing developments unless they find a "specific, adverse, and unavoidable impact on public health or safety." (§ 65589.5, subd. (j); *California Renters*, at p. 835.) Because all of these laws are still proving insufficient due to local laws capping housing density, our Legislature enacted Senate Bill 10 to give local governments an additional tool to carry into effect the pressing

11

concern of housing supply and affordability that has been a matter of statewide concern for decades.

Second, we independently find a sufficient factual and policy basis for our Legislature's repeated findings over the years that the issue of assuring an adequate supply of affordable housing is one of statewide or regional concern (§§ 65913.5, subd. (f), 65580, subd. (a) ["the availability of housing is of vital statewide importance"], 65589.5, subd. (g) ["the Legislature finds that the lack of housing . . . is a critical statewide problem"]), even though it might appear to be a local issue at first blush. To begin, there is a direct link between the affordability of housing and the supply of housing. Under basic economic principles, prices go up when demand exceeds supply. Thus, the rise in housing prices at every income level in California is logically linked to the insufficient supply of housing at all of those income levels. (Accord, *California Renters*, *supra*, 68 Cal.App.5th at p. 848 ["a shortage of housing in our state has led to escalating costs that for many have rendered adequate shelter unaffordable"].) What is more, the task of ensuring a great supply of housing is one that is logically handled at the state level. That is because local governments are susceptible to "not in my backyard" (or NIMBY) pressure: Local residents do not want to live near high-density housing, so they elect local officials hostile to such housing or lobby heavily against such housing, figuring that *some other local government* will approve higher-density projects (§ 65589.5, subd. (a)(1)(D) ["Many local governments do not give adequate attention to the economic, environmental, and social costs of decisions that result in disapproval of housing development projects"]; *California Renters*, at p. 835 [attributing "shortfall" in housing "to community resistance to new hosing,

12

facilitated by laws allowing cities and counties to control when and where development occurs"]); because local governments would not address the housing shortage if left to their own devices, state intervention is sensible—if not outright necessary (accord, *Von Raesfeld*, *supra*, 3 Cal.3d at p. 247 [where issue requires cooperation of multiple cities to solve, it is a matter of statewide concern]).

Not surprisingly, our Legislature in enacting Senate Bill 10 cited the same two reasons—the economic link between housing prices and housing supply as well as NIMBY pressures—in explaining why the issue of an affordable housing supply is one of statewide concern.[5]  Regarding economics, the Legislature noted that "[a] major cause of [the] housing crisis is the mismatch between the supply and demand for housing."  (Assem. Com. on Housing and Community Development, Rep. on Sen. Bill No. 10 (2021-2022 Reg. Sess.) as amended June 14, 2021, p. 4.) Regarding the NIMBY problem and the need for state intervention, the Legislature noted that "a major factor" contributing to the "state's lack of housing production" is that "local . . . governments are quick to respond to vocal community members who may not want new neighbors." (Sen. Com. on Governance and Finance, Rep. on Sen. Bill No. 10 (2021-2022 Reg. Sess.) as amended April 13, 2021, pp. 2-3.)

Petitioners and their amici curiae resist our conclusion that Senate Bill 10 addresses an issue of statewide concern with what boils down to two arguments.  First, they argue that it is dangerous to blindly defer to our Legislature's finding that an issue is one of statewide concern.  We agree, which is why we

_____

[5]     We may take judicial notice of this legislative history. (Evid. Code, §§ 452, subd. (c), 459.)

have given that finding great weight but nonetheless independently examined the reasons behind the finding in this case before concluding that it is supported. Second, amici curiae argue that the Legislature did not produce a sufficient evidentiary record to establish that there is a shortage as to *all* housing, rather than a shortage of *affordable* housing. To the extent amici curiae are asserting that the Legislature's findings are sufficient only if preceded by a court-like proceeding supported by evidence, we disagree; our Legislature may not make findings that are arbitrary, irrational, or based on speculation (*American Academy of Pediatrics v. Lungren* (1997) 16 Cal.4th 307, 349-350, 357-358), but our Legislature is not a court and thus has the greater latitude necessary to consider not only evidence adduced at legislative hearings, but also to consider policy and other practical considerations. Further, and as we note above, the increase in housing prices at *all* levels reasonably supports the Legislature's finding that there is a shortage of housing at *all* of those levels.

## II.  Has Senate Bill 10 Displaced Local Laws Setting Housing Density Caps?

### A.  *Has Senate Bill 10 displaced those caps under the law governing preemption of local laws by state law?*

Our Legislature may displace ordinances enacted by local governments either *expressly* or *by implication*. (*Sherwin-Williams, supra*, 4 Cal.4th at p. 897.) The Legislature impliedly preempts—and thus invalidates—"local legislation" if that legislation (1) "is 'duplicative'" of the state law, (2) contradicts or is inimical to the state law, or (3) addresses "an area that is 'fully occupied' by" state law "when the Legislature has expressly manifested its intent to 'fully occupy' the area." (*Id.*, at pp. 897-

14

898; *Chevron U.S.A. Inc. v. County of Monterey* (2023) 15 Cal.5th 135, 142 (*Chevron*); *American Financial Services Assn. v. City of Oakland* (2005) 34 Cal.4th 1239, 1251-1252.)

A local law contradicts and is inimical to—and therefore conflicts with—a state law in two situations pertinent here. First, a local law contradicts a state law when the local law says, "You *cannot* do X," and the state law says, "You *must* do X." In this situation, the local law is preempted because "the [local] ordinance directly . . . prohibits what the state enactment *demands*." (*City of Riverside v. Inland Empire Patients Health & Wellness Center, Inc.* (2013) 56 Cal.4th 729, 743 (*City of Riverside*), italics added.)[6] Second, a local law contradicts a state law when the local law says, "You *cannot* do X," and the state law says, "You have the option of doing X, Y, or Z." In this situation, the local law is preempted because the "'local [ordinance] prohibits . . . what the [state] statute *permits or authorizes*.'" (*Chevron, supra*, 15 Cal.5th at p. 149, italics added.)

We hold that Senate Bill 10 effects a limited preemption of local housing density caps. Given that section 65913.5 explicitly grants local legislative bodies the power to supersede local housing density caps under certain circumstances, there is a good argument to be made that Senate Bill 10 expressly preempts those caps. We need not confront that issue, however, because local housing destiny caps conflict with and are inimical to Senate Bill 10. That is because those caps tell the local legislative body, "You cannot do X [where X is approving a project

---

[6]     This type of preemption also exists in the inverse situation where the local law says, "You *must* do X," and the state law says, "You *cannot* do X." (*City of Riverside, supra*, 56 Cal.4th at p. 743.)

that exceeds the locally enacted housing density cap],” while Senate Bill 10 tells the local legislative body, “You have the option of doing X [opting to exceed the cap] or doing Y [opting not to exceed the cap].”  In this situation, the local housing caps “prohibit” what Senate Bill 10 “permits or authorizes.”  This is analogous to the analysis in *Chevron*, where the Supreme Court held that a state statute that granted a “state supervisor” the power to “approve all production methods” of recovering underground minerals conflicted with a local ordinance because the local ordinance took some of those “methods off the table.” (*Chevron, supra*, 15 Cal.5th at p. 149.)

Petitioners resist our conclusion with what boils down to four arguments.

First, they assert that *Citizens for Planning Responsibly v. County of San Luis Obispo* (2009) 176 Cal.App.4th 357 supplies the sole test for assessing preemption of local initiatives, and that none of its three tests for preemption—namely, (1) the Legislature has occupied the field, (2) the Legislature is exclusively delegating the power to enact laws to the local legislative body and shutting down the power to enact local voter initiatives entirely, or (3) the exercise of the initiative power “would impermissibly interfere with an essential governmental function”—applies.  (*Id.* at p. 371.)  Thus, petitioners seem to reason, implied preemption due to a conflict between the laws is not a viable type of preemption.  We disagree.  *Citizens for Planning Responsibly* does not displace the test for preemption set forth by our Supreme Court, particularly when other Supreme Court precedent (which we address in the next subsection) directly addresses what our Legislature must do to preempt the local initiative power.

16

Second, petitioners contend that local housing density caps do not conflict with Senate Bill 10 because Senate Bill 10 does not *demand* what the caps prohibit; Senate Bill 10 does not *require* local legislative bodies to supersede the density caps, petitioners explain, but rather just gives them the discretion to do so. This contention lacks merit for two reasons. To begin, this contention treats the first type of conflict preemption—that is, when the local law says, "You *cannot* do X," and the state law says, "You *must* do X"— as if it is the *only* type of conflict preemption; as explained above, it is not. Although *City of Riverside* articulated that first type, *Chevron* explicitly disclaimed that *City of Riverside's* articulation was the sole type of conflict preemption because, as *Chevron* explained, that articulation would "'improperly limit the scope of the preemption inquiry.'" (*Chevron, supra,* 15 Cal.5th at p. 148.) Petitioners urge that we cannot read *Chevron* to eclipse *City of Riverside* because *City of Riverside* addressed a different issue (namely, a "*vertical conflict*" between the state and the local legislative body). We disagree: Both *City of Riverside* and *Chevron* defined when a state law preempts a local law, which is precisely the issue here—namely, whether Senate Bill 10 preempts local housing density caps. And even if we were to apply the first type of conflict preemption set forth in *City of Riverside*, local housing density caps would still conflict with Senate Bill 10 because that first type has an exception recognizing that a "local regulation" is preempted "when a [state] statute or statutory scheme seeks to promote a certain activity and, at the same time, permits more stringent local regulation of that activity" should the "local regulation" be "used to completely ban the activity or otherwise frustrate the statute's purpose." (*Great Western Shows v. County of Los*

17

*Angeles* (2002) 27 Cal.4th 853, 867-868; *City of Riverside*, 56 Cal.4th at p. 758; *Chevron*, at p. 149.)  That exception applies here because Senate Bill 10 seeks to promote higher density housing projects and allows for "more stringent local regulation" of housing projects, but local housing density caps are being used to "frustrate the statute's purpose."

Third, petitioners argue that Senate Bill 10 will not always alter the *outcome* of individual zoning decisions because a local legislative body might elect *not* to supersede a local housing density cap.  This is true, but irrelevant.  By granting local legislative bodies the discretion whether to supersede local housing density caps, there will, by definition, be instances in which a local legislative body making a decision as to a specific parcel will elect not to supersede the applicable density cap and, hence, Senate Bill 10 will not always change the outcome of those parcel-by-parcel decisions.  But this result merely reflects the existence of the discretion Senate Bill 10 confers; it does *not* somehow erase the fundamental conflict between a local legislative body having *some* discretion to supersede those caps (as it does under Senate Bill 10) and having *no* discretion to supersede (as it does under the local law).  And because the local caps prohibit what Senate Bill 10 authorizes—that is, the discretion to supersede—there is a conflict regardless of whether the outcomes might be different for any given zoning decision.

Fourth and lastly, petitioners posit that there need not be a conflict between Senate Bill 10 and initiative-based housing density caps because it is possible to ask *the local electorate* whether to supersede an initiative-based housing density cap, thereby sidestepping any conflict.  This position utterly ignores that a main reason our Legislature enacted Senate Bill 10 is

because local electorates were *blocking* attempts to increase housing density.  Petitioners' suggestion that Senate Bill 10's mechanism can be swapped out for "letting the voters decide" on a parcel-by-parcel basis would perpetuate the existing paralysis and completely frustrate a main reason for Senate Bill 10's enactment.  We respectfully decline petitioners' invitation to neuter Senate Bill 10.

### B.     *Has Senate Bill 10 satisfied the more exacting standard for preemption of local voter initiatives?*

For over a century, our state Constitution has enshrined the power of the voters in counties and cities to enact local laws by voter initiative.  (Cal. Const., art. II, § 11 ["Initiative and referendum powers may be exercised by the electors of each city or county"]; *Perry v. Brown* (2011) 52 Cal.4th 1116, 1140-1141; *Voters for Responsible Retirement, supra*, 8 Cal.4th at p. 776.)[7] This power exists to "afford the people the ability to propose and to adopt" laws "that their elected public officials had refused or declined to adopt." (*Perry*, at p. 1140.)  Unlike laws enacted through the usual legislative process, laws enacted by voter initiative may be altered only in accord with the terms for amendment set forth in the initiative or, if none are set forth, by a further vote of the electorate.  (Elec. Code, § 9217; *Rossi v. Brown* (1995) 9 Cal.4th 688, 715-716; *Brookside Investments, Ltd. v. City of El Monte* (2016) 5 Cal.App.5th 540, 551-552; accord, Cal. Const., art. II, § 10, subd. (c); *Amwest Surety Ins. Co. v. Wilson* (1995) 11 Cal.4th 1243, 1251.)  Given its importance in our constitutional scheme, any doubts about the initiative power are to be ""reasonably . . . resolved in favor of"" that power.

---

[7]     Voters also have the power to enact *state* laws by initiative. (Cal. Const., art. II, § 8.)

(*Voters for Responsible Retirement*, at pp. 776-777; *Associated Home Builders etc., Inc. v. City of Livermore* (1976) 18 Cal.3d 582, 591.)

Contrary to what petitioners assert after proffering a detailed exegesis on the initiative power, our Legislature may preempt local laws adopted through the initiative power. In deference to the presumption in favor of the exercise of that power, however, a state statute preempts local laws adopted through initiative only if there is a "'clear showing'" or "definite indication" of legislative intent to do so. (*DeVita*, *supra*, 9 Cal.4th at pp. 775-776; *City of Morgan Hill*, *supra*, 5 Cal.5th at p. 1079.)

In enacting Senate Bill 10, our Legislature clearly showed and definitely indicated its intent to displace local housing density caps adopted through local voter initiative. Section 65913.5 explicitly grants local legislative bodies the power to "adopt an ordinance to zone a parcel for up to 10 units of residential density per parcel" "[n]otwithstanding any local restrictions . . . including . . . *restrictions enacted by local initiative.*" (§ 65915.3, subd. (a)(1), italics added.) Indeed, section 65913.5 even goes so far as to erect a separate and higher procedural requirement for superseding an initiative-based housing density cap than for superseding a legislatively enacted cap—namely, a two-thirds vote rather than a simple majority. (*Id.*, subd. (b)(4).) These provisions leave no doubt that our Legislature explicitly contemplated that Senate Bill 10 would be used to supersede local voter initiatives.

Petitioners respond with two arguments.

First, they seem to suggest that the power of voter initiative is so powerful, so fundamental, and so foundational that our Legislature can *never* preempt local laws enacted by

20

voter initiative.  Relatedly, they assert that the *constitutional* nature of the initiative power means that no mere *statute* can override that power because the Constitution trumps any statute. As the precedent detailed above indicates, petitioners are just plain wrong that local laws adopted by initiative may never be preempted by state law.  Further, this is not a competition between a constitutional provision and a statute; to the contrary, and as our Supreme Court has explained, the Legislature's power to preempt initiative-enacted local laws is *also* constitutional in nature, "deriv[ing] not only from the exceptions found implicitly" in article II, section 11 of the state Constitution conferring the local initiative power, "but also from [the Legislature's] power to enact general laws of statewide importance that override local legislation" as set forth in article XI, section 7 of the state Constitution.  (*Voters for Responsible Retirement*, *supra*, 8 Cal.4th at p. 779.)

Second, petitioners argue that the "exclusive delegation" doctrine discussed in *Committee of Seven Thousand*, *supra*, 45 Cal.3d 491 does not apply to Senate Bill 10 because (1) Senate Bill 10 does not divest local voters of the power to enact housing density caps by initiative, and hence does not exclusively delegate to local legislative bodies the exclusive power over housing density caps; and (2) the power of voter initiative is "an inherent *preexisting* power" that belongs *to the voters* (*City of Riverside*, *supra*, 56 Cal.4th at p. 754, fn. 8), such that it can never be taken away from the voters and then redelegated to the local legislative bodies.  We agree with petitioners that Senate Bill 10 does not deprive local voters of the power to adopt initiatives regulating

21

housing density;[8] instead, it grants local legislative bodies a limited power to supersede *all* local housing density caps, whether enacted by ordinance or by voter initiative—and, pertinent here, whether those ordinances and initiatives were enacted before *or after* Senate Bill 10 came into being.  To the extent petitioners are asserting that the power of initiative that inheres in the voters can never be preempted, they are, again, wrong on the law.

## III.   Can our Legislature Validly Exercise Its Preemptive Power by Imbuing Local Legislative Bodies With the Discretion to Decide Whether to Exercise That Power on a Parcel-by-Parcel Basis?

In light of the analysis set forth above, and as petitioners agreed at oral argument, our Legislature could have validly exercised its preemption power to effect an across-the-board nullification of all local housing density caps across the state.  But Senate Bill 10 does not take such a drastic, sweeping step.  Instead, it takes the more modest and novel approach of cloaking local legislative bodies with the mantle of state authority by granting those bodies some discretion on whether to supersede local laws, including those adopted by voter initiative.  Does this more restrained approach render Senate Bill 10 unconstitutional?

We conclude it does not.  Apart from the general notion that the Legislature's power to undertake a greater act (such as wiping out all local housing density caps) typically means it has the power to undertake lesser acts (such as allowing local bodies to decide whether to wipe out those caps on a parcel-by-parcel basis) (see, e.g., *Von Raesfeld*, *supra*, 3 Cal.3d at p. 248), we

---

8      We therefore disagree with the trial court's ruling on this point.

22

conclude that Senate Bill 10's delegation of preemptive power to local legislative bodies is constitutionally permissible for three reasons.

First, the weight of precedent *supports* (but does not *dictate*) this result.  In *Committee of Seven Thousand*, *supra*, 45 Cal.3d 491, a state statute granted local legislative bodies the power to impose development fees to fund the construction of major traffic corridors running between cities and, in tandem, barred the adoption of local initiatives prohibiting such fees.  In rejecting a constitutional challenge to this statute, our Supreme Court noted that "[i]n matters of statewide concern," the state has the option of either "preempt[ing] the entire field to the exclusion of all local control" or "grant[ing] some measure of local control and autonomy" while "impos[ing] procedural restrictions on the exercise of the power granted, including the authority to bar the exercise of the initiative" power.  (*Id.* at p. 511.)  Although the statute in *Committee of Seven Thousand* is not identical to Senate Bill 10 because Senate Bill 10 does not divest local voters of their initiative power when it comes to housing density caps, *Committee of Seven Thousand* does support the notion that our Legislature may delegate to local legislative bodies discretion on how to act (that is, to impose construction fees or not impose construction fees) while simultaneously superseding any voter initiatives that would interfere with that discretion.  Along similar lines, in *Von Raesfeld*, *supra*, 3 Cal.3d 239, a state statute granted cities the power to issue construction bonds for sewage projects at a 7-percent interest rate notwithstanding local laws requiring a city-wide "bond election" regarding the issuance and interest rate of such bonds.  (*Id.* at p. 248.)  In rejecting a constitutional challenge to this statute, our Supreme Court noted

23

that the Legislature's power to "eliminate entirely the [local] requirement of voter approval of the . . . bonds in issue" necessarily included the "lesser act" of granting the city's legislative body the power to issue bonds at the rate authorized by the state statute.  (*Ibid.*)  Although the statute in *Von Raesfeld* is not identical to Senate Bill 10 because *Von Raesfeld* did not involve a voter initiative, *Von Raesfeld* does support the notion that our Legislature may delegate to local legislative bodies discretion on how to act (that is, to issue bonds with a higher interest rate or impose them at the rate approved by the voters during a bond election) while simultaneously superseding any local ordinances that would interfere with that discretion.

Second, imbuing local legislative bodies with the discretion on whether to supersede local housing density caps is ostensibly *more* solicitous of the initiative power than a wholesale invalidation of all local caps in the state.  Senate Bill 10 is a case in point.  Senate Bill 10 does not nullify all local housing density caps in the state.  It does not bar local voters from enacting new housing density caps through the initiative power.  The discretion it grants to local legislative bodies to supersede local housing density caps may only be exercised in "transit-rich area[s]" and "urban infill site[s]" that are not in "very high fire severity zone[s]."  (§ 65913.5, subds. (a)(1), (a)(4)(A) & (b)(3).)  That discretion only permits the local legislative body to deviate from existing local caps "up to 10 units of residential density per parcel."  (*Id.*, subd. (a)(1).)  That discretion does not exist *at all* against voter initiatives "designat[ing] publicly owned land as open-space land . . . or for park or recreational purposes," and exists against all other initiative-based caps only if two-thirds of the local legislative body votes to supersede.  (*Id.*, subds. (a)(1),

24

(a)(4)(B) & (b)(4).)  If a state statute nullifying dozens if not hundreds of local initiative-based housing density caps is constitutional despite its affront to the local initiative power, it is difficult to see how Senate Bill 10—which has a far less expansive effect on initiative-based caps and hence poses a demonstrably lesser affront to the initiative power—is somehow *more* constitutionally offensive.

Third and lastly, the net *effect* of Senate Bill 10 is not constitutionally offensive.  The Legislature could have passed a state law that preempts all local housing density caps (including those adopted by local voter initiative), but grants local legislative bodies the power to decide whether to resurrect—and hence whether to apply—the preempted (and hence defunct) local ordinances or initiatives when considering a particular zoning application.  At oral argument, petitioners agreed such a law would *not* be unconstitutional.  But Senate Bill 10 has the same net effect because it also grants local legislative bodies the power to decide whether to supersede—and hence whether to apply— local ordinances or initiatives when considering a particular zoning application.  Where Senate Bill 10 differs from the hypothetical law is that the Legislature left local voter initiatives intact unless and until they are superseded in a particular zoning decision rather than invalidating all local voter initiatives and then leaving it to the local legislative bodies whether to resurrect them.  In that regard, Senate Bill 10 is once again *more* solicitous of the initiative power.  Petitioners urged at oral argument that Senate Bill 10's mechanism for achieving this effect constitutes a greater affront to the "status" of the local initiative power than the hypothetical law, but we decline to invalidate a statute based on its affront to the status of the initiative power when its net

effect is less offensive to that power than other mechanisms posing an allegedly lesser affront.

Petitioners offer four arguments in response.

First, they argue that neither *Committee of Seven Thousand* nor *Von Raesfeld* are directly on point because neither involves a statute like Senate Bill 10, which imbues local legislative bodies with the discretion to invalidate local laws, including those adopted by voter initiative. We agree, as we have acknowledged above. But that does not rob those cases of their persuasive force by analogy.

Second, petitioners maintain that Senate Bill 10's grant of discretion is *more* constitutionally offensive than an outright ban because discretion effectively pits the local legislative body against the local voters, and the state Constitution dictates that the local voters should prevail in that battle. A local legislative body should be able to invalidate a local voter initiative, petitioners continue in the same vein, only if the Legislature *completely negates* the voters' power to invoke the initiative power and *exclusively delegates* the power to legislate to the local legislative body, as the state statute did in *Committee of Seven Thousand*.[9] This argument ignores that the local legislative body in this instance is wearing the mantle of state preemptive power, and hence it is *not* pitting "local" against "local" but rather "state" against "local"—and the Constitution dictates that the state should prevail in *that* battle. And we have already explained why, in our view, it makes no sense to condemn Senate Bill 10 as

---

[9]     We note that this argument is logically incompatible with petitioners' other argument, discussed above, that the local initiative power can *never* be delegated because it inheres in the voters.

26

an unconstitutional violation of the initiative power merely because it takes the lesser step of not *completely* depriving local voters of that power (as did the statute in *Committee of Seven Thousand*).

Third, petitioners assert that upholding Senate Bill 10 will pave the path to the invalidation of all local voter initiatives. Given the gamut of constitutional analysis that a state statute affecting local initiatives must run—as this opinion vividly illustrates—we disagree that the proverbial sky is falling.

Fourth and lastly, petitioners argue that granting local legislative bodies the discretion to supersede voter initiatives setting caps on housing density will lead to poorer decisionmaking on a parcel-by-parcel basis because elected legislative bodies are more likely to be captured by local politics than the electorate as a whole. Petitioners remind us that the very purpose of the voter initiative power is to blunt the impact of elected politicians being "hostile" toward the will of the voters. (*DeVita*, supra, 9 Cal.4th at p. 788.) These are viable policy reasons why enacting a statute like Senate Bill 10 might be ill advised, but it is not a reason to declare it facially unconstitutional. (*Marin Healthcare Dist. v. Sutter Health* (2002) 103 Cal.App.4th 861, 872 ["as a court, we must defer to the Legislature's judgment on which . . . policies to adopt"].) Indeed, the Legislature ostensibly had these very same policy concerns in mind when it fixed a higher threshold for superseding initiative-based housing density caps than for superseding caps enacted by the local legislative body. And to the extent a local legislative body's decision with respect to a specific parcel is ill advised, the parties aggrieved by that decision can seek administrative and judicial review; but, as noted above, the possibility that a local

27

legislative body might abuse its discretion in specific zoning decisions in the future is not a ripe challenge *today* and also provides no basis for striking down Senate Bill 10 on its face. (*Salerno*, *supra*, 481 U.S. at p. 745.)

**IV.  Do Earlier Enacted Voter Initiatives Constitute a Preemptive Exercise of the Local Legislative Body's Discretion Under Senate Bill 10, Such That the Body Lacks the Power to Supersede Such Initiatives?**

Bound up with their constitutional challenge to Senate Bill 10, petitioners assert that the statute does not permit local legislative bodies to supersede voter initiative-based housing density caps that already exist because, in their view, the existing initiative operates as a preemptive decision by the local jurisdiction not to supersede local caps under the discretion that Senate Bill 10 confers.

We reject this construction of Senate Bill 10 for three reasons.

First, the plain text of section 65913.5 does not have an exception for already-existing initiatives, and we are not permitted to effectively amend that text to add one.  (*Jarman v. HCR ManorCare, Inc.* (2020) 10 Cal.5th 375, 392.)

Second, denying local legislative bodies the discretion to supersede existing housing density caps previously adopted by initiative would substantially narrow that discretion, and conferring that discretion was the chief reason the Legislature enacted Senate Bill 10 in the first place; we are loath to construe the statute in a way that would largely frustrate our Legislature's purpose.  (*People v. Johnson* (2022) 83 Cal.App.5th 1074, 1083, review granted Dec. 14, 2022, S277196; *Isrin v. Superior Court* (1965) 63 Cal.2d 153, 163; *Voters for Responsible*

*Retirement*, *supra*, 8 Cal.4th at p. 782 [declining to construe state statute to preserve local initiative power because doing so would frustrate the purpose of the statute].)

Third and lastly, this construction is not supported by precedent. To be sure, *Higgins v. City of Santa Monica* (1964) 62 Cal.2d 24 might at first glance appear to support petitioners' argument. There, the state had previously granted the City of Santa Monica authority over whether to develop its coastal tidelands, and the city's voters had previously adopted an initiative prohibiting all "drilling or prospecting for oil, gas, and other hydrocarbon substances." (*Id.* at p. 26.) Although the state subsequently enacted a statute regulating the "mode and manner in which . . . cit[ies] may execute oil leases to tide and submerged lands," *Higgins* held that this statute regarding *procedure* did not preempt local jurisdictions' substantive decisions about *whether* to develop those tidelands and thus did not nullify the previously enacted initiative, which continued to operate as Santa Monica's decision *not* to develop. (*Id.* at p. 32.) But *Higgins* is inapt. The statute in *Higgins* was purely procedural and did not purport to alter or affect local jurisdictions' substantive decisionmaking, such that previously made substantive decisions would logically remain unaffected. Senate Bill 10, by contrast, expands the range of possible substantive decisions that a local jurisdiction can make by granting local legislative bodies the discretion to supersede some local density caps, and does so in light of the pressing and severe shortage of housing in California; treating previously made substantive decisions enacted through voter initiative as forever binding would frustrate Senate Bill 10's purpose because the local jurisdiction should be given the opportunity to reevaluate that prior decision in light of the

29

housing crisis, which constitutes a change of conditions.  (See, e.g., *People v. Buycks* (2018) 5 Cal.5th 857, 893 [prior sentencing decision by trial court must be reexamined when there are "'changed circumstances'"].)

## DISPOSITION

The judgment is affirmed.  The State is entitled to its costs on appeal.

## **CERTIFIED FOR PUBLICATION**.


_____, J.
HOFFSTADT


We concur:


_____, P. J.
LUI


_____, J.
CHAVEZ